**Joe Mike MOUSER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.
Feb. 16, 1973.

Frank E. Haddad, Jr., Louisville, W. Earl Dean, Harrodsburg, for appellant.

Ed W. Hancock, Atty. Gen., Robert W. Willmott, Jr., Asst. Atty. Gen., Frankfort, for appellee.

GARDNER, Commissioner.

This appeal is from a judgment entered pursuant to the verdict of a jury finding the appellant guilty of cattle stealing (KRS 433.250) under which his punishment was fixed at 10 years in the state penitentiary.

For a reversal, the appellant relies on the following seven grounds listed in his "Table of Contents": "(1) There was insufficient evidence to sustain the finding of guilt, therefore, the trial court committed prejudicial error in not directing a verdict of acquittal; (2) eliminating the testimony of the accomplice, Priddy, was the other evidence sufficient to connect the appellant with the commission of the crime; (3) the trial court committed prejudicial error in failing to give a cautionary instruction on testimony of an accomplice; (4) the trial court committed prejudicial error in admonishing the jury to limit the consideration they were to give a prior inconsistent and contradictory statement of the witness, Priddy; (5) it was prejudicial error for the court, over objection, to permit Detective McQuown to give his opinion that appellant was guilty of the crime charged; (6) the trial court committed prejudicial error in permitting evidence of other crimes to be introduced in evidence; and (7) the trial court committed prejudicial error in the manner in which previous felony convictions were introduced."

Before taking up the numerous questions presented by appellant, we should recite some of the facts of the case. These facts, given for the most part by one Hartsell Priddy claimed by appellant herein to have been an accomplice, showed that about one month prior to the date of the alleged crime, the appellant Joe Mike Mouser went to Priddy and asked him to rent some trucks for the appellant; that the appellant told Priddy at the time that he wanted to do a little cattle stealing. Priddy testified it was the understanding that he and appellant would steal the cattle. Priddy further testified that he rented two trucks, a Ford and an International, in the name of Harold Travis Perkins, a fictitious name; that the appellant furnished the money to pay the rentals. Priddy provided a fictitious driver's license and he, Priddy, participated in building some racks on one of the trucks, the cost of which ($365) was paid by appellant. According to all the evidence, Priddy had nothing further to do with the scheme until two or three o'clock on the morning of April 1, 1970, (the morning after the date on which the cattle were stolen) when appellant stopped by the home of Priddy and told him he had a load of cattle on the International truck which Priddy had obtained for the appellant. Appellant had stopped at Priddy's home the day before but Priddy was away. He testified, "I assume he wanted me to go with him, but I wasn't there." In answer to a question, Priddy replied "Well, I knowed sooner or later he was going to get some cattle, but I didn't know when or where." Priddy stated that the appellant told him the twenty-five cattle were stolen, but he did not go into any further detail. The cattle fitted the description of those stolen the day before from the Rodes farm in Boyle County. Priddy went with the appellant to the farm of Lester Higdon in Grayson County and helped to unload the cattle. After the cattle were unloaded, the truck was left in a field back of Higdon's house out of view of the highway. Appellant put a license plate on one of the trucks which he had removed from a dump truck in Leitchfield, Kentucky. Appellant did not own the dump truck. Priddy testified that he had been threatened by the appellant a number of times, and that after he gave his testimony before the grand jury, he was shot twice by an unknown assailant—once in the knee and once in the right shoulder. Priddy admitted having made an affidavit in Nashville, Tennessee, exonerating appellant, but testified on this trial that appellant and one Charles Stiles took him to Nashville, put him under extreme fear, and caused him to make the affidavit which he stated at the trial was untrue. Priddy claimed he was a friend of appellant; that he first met appellant in 1967 when they were inmates of the penitentiary.

■ It first should be determined whether Priddy was an accomplice. A conviction cannot be had upon the testimony of an accomplice unless corroborated by

other evidence tending to connect the defendant with the commission of the offense. RCr 9.62. If Priddy was an accomplice as a matter of law, the court should have instructed the jury to that effect. Hammershoy v. Commonwealth, Ky., 408 S.W.2d 624 (1966). If there was a reasonable doubt as to whether he was an accomplice, the jury should have determined the question under a proper instruction. Elmendorf v. Commonwealth, 171 Ky. 410, 188 S.W. 483 (1916). If as a matter of law Priddy was not an accomplice, the court should have declined to present the issue to the jury. See Caine v. Commonwealth, Ky., 491 S.W.2d 824 (this day decided).

■ Under the evidence we are of the opinion that whether Priddy was an accomplice was for the jury's determination. Without going into the distinction of conspirators, aiders and abettors, accessories before the fact, and accessories after the fact, an acceptable test as to whether Priddy was an accomplice is whether he could have been convicted as a principal, aider and abettor, or accessory before the fact. See KRS 431.160; Levering v. Commonwealth, 132 Ky. 666, 117 S.W. 253 (1909); Galloway v. Commonwealth, 301 Ky. 299, 191 S.W.2d 821 (1945); and Warren v. Commonwealth, Ky., 333 S.W.2d 766 (1960). In such cases all reasonable inferences pointing toward his guilt or innocence should be considered by the jury. Similarly, in order to determine if Priddy was an accomplice, the jury should be permitted not only to consider the statement of Priddy but all reasonable inferences derived from his statement and other facts of the case.

Upon another trial if the facts are substantially the same the court under proper instruction should leave to the jury's determination whether Priddy was an accomplice, with the further instruction that if it finds he was an accomplice then appellant cannot be convicted upon Priddy's testimony unless the jury also finds there was corroborating evidence tending to connect appellant with the crime.

■ The Commonwealth argues that regardless of whether Priddy was an accomplice or not, there was such strong corroborating evidence that it was unnecessary to present the question to the jury. Reference is made to Fox v. Commonwealth, 248 Ky. 466, 58 S.W.2d 608 (1933); Sizemore v. Commonwealth, Ky., 262 S.W.2d 817 (1953); Combs v. Commonwealth, Ky., 341 S.W.2d 774 (1961); and Sarver v. Commonwealth, Ky., 425 S.W.2d 565 (1968). That is but another way of saying that the corroborating evidence was such that it tended to connect appellant with the commission of the crime as a matter of law. Each case must be considered upon its own facts. We have carefully examined the evidence and have concluded that a determination of the question rightfully belonged to the jury. A resume of the corroborating evidence is as follows.

David Fultz, a police officer, testified that about two weeks after the cattle were stolen he observed a cattle truck parked at a truck stop near Glendale, several miles from the Rodes farm. Priddy had driven it to the truck stop. Behind the truck was a black Dodge Charger driven by appellant. Appellant first denied this, but later admitted it. The black Dodge Charger was also identified as belonging to appellant both by eyewitnesses and by photographs showing the Charger in front of appellant's trailer.

W. T. Gorley testified that about 5 p. m. on March 31, 1970, he saw a black car and a red one parked by the side of the road three miles west of Danville near the farm from which the cattle were stolen. Gorley stated that the black car "looked like" the Dodge Charger shown in the photographs introduced by the Commonwealth and that appellant "looks like" the man he saw by the side of the black car. He also stated that later on the same evening he saw two cars and a truck with the lights on parked by the side

of the road three miles from the Rodes farm. Some time later, he says, he saw one car and a large truck near the entrance of the Rodes farm.

Another local resident, Burtis Reynolds, Jr., testified that on the same evening a car passed him on a double yellow line; that a short distance on down the road a large cattle truck pulled over to his right and stopped; that the car which recently passed him was parked in front of the cattle truck; and that the driver of the car "resembles" the appellant "some." The total observations of Reynolds led him to advise his brother-in-law, who lived nearby, that if he were the brother-in-law, he "would sleep with one eye open" that night.

Richard McQuown testified that "cow manure, straw and black hair" were found in one of the seized trucks. Two other witnesses stated that the "straw" was "similar" to that taken from the Rodes farm.

It was also shown that tire tracks at the Rodes farm were similar to those of one of the trucks; that is, the tires and tracks were eight inches wide and had four grooves. The witness testified, however, that there was nothing unusual about the tires and there were probably millions of them in use.

Martin H. Williams, attendant at the Boston Toll Plaza located about 58 miles from Danville, testified that at 1:30 or 2 a. m. on April 1 two cattle trucks, one an International and the other a Ford, both containing black cattle, passed through the toll plaza traveling west, and that it was very unusual for cattle trucks of that size to be passing that way at that hour of the night. Williams did not recognize any of the occupants of the trucks.

We do not believe the corroborating evidence was of such strength as to justify a determination that it tended to connect appellant with the commission of the crime as a matter of law.

Other errors claimed by appellant probably will not be of concern on the next trial so we decline to discuss them.

The judgment is reversed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

PALMORE, C. J., and MILLIKEN, OSBORNE, STEINFELD and STEPHENSON, JJ., concurring.