Johnny Marshall SMITH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

April 22, 1980.

Jack E. Farley, Public Advocate, Donna Boyce Proctor, Timothy T. Riddell, Sara L. Collins, Asst. Public Advocates, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Reid C. James, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On July 1, 1978, Ronnie Jarvis was killed by three blasts from a .20-gauge shotgun. The shooting took place on a little-used strip mine road, about four miles west of Greenville, Kentucky. On August 16, 1978, the appellant was indicted for having "committed capital murder by shooting and killing Ronnie Jarvis with a shotgun for profit or for hire and during the course of robbing said Ronnie Jarvis." Ricky Simms likewise was indicted for the same offense; however, he confessed to his part in the act and was sentenced to 21 years in prison. After a four-day trial a jury found the appellant guilty as charged and fixed his punishment at death. On this appeal the appellant presents 16 alleged errors.

The testimony of Ricky Simms discloses that he had been romantically involved with Carolyn Jarvis, wife of the victim, for over two months prior to the killing. About one month prior to the killing, Carolyn discussed with Simms her desire to have her husband killed. Simms agreed to do the job, but did not carry out the dastardly deed. Carolyn became incensed with him and threatened to get someone else to do the job. A few days before the shooting the appellant was introduced to Carolyn and a second plan was conceived for killing Ronnie Jarvis, with appellant acting as the executioner, for which he was to receive the victim's collection of guns (six).

On July 1, 1978, at about 9:00 p. m., Simms went to Jarvis' home and, under the pretense that he was having trouble with his car, solicited Jarvis' help to get it started. The two of them left in Jarvis' car, with Jarvis driving. Under the direction of Simms, Jarvis drove to where Simms' car was parked. Assuming that the battery would not start the car, Jarvis went to check under the hood of the car. Simms moved to the rear of the car so as to be out of the line of the fire. Appellant moved from where he had been hiding to a distance of about twenty feet from Jarvis and fired the first shot into Jarvis' side. Jarvis fell to the ground. While Jarvis pleaded for his life, the appellant approached within three feet of Jarvis and shot him again. He reloaded the gun and shot Jarvis a third time. Together the appellant and Simms removed Jarvis' body from the roadway and drove away in Simms' car. After driving only a short distance, they returned to the victim and robbed him of his wallet which contained only $4. After leaving the scene of the murder, they drove toward Central City. Simms stated that about six miles up the road they stopped by a levy, discarded the shotgun, and then proceeded on to Central City where they ran the car through a car wash. They then went to appellant's apartment where they changed their clothes and discarded Jarvis' wallet in a ditch behind the building. The clothing which they had been wearing was put in an empty box and the box was thrown from the car as they drove to Greenville. Of this clothing, Simms identified a red t-shirt, a pair of bluejeans, a pair of shoes, and a pair of socks as belonging to him. He also identified a pair of shoes, a pair of bluejeans, a pair of socks, a long-sleeve shirt, and some underwear as the clothes Smith had worn the night of the killing.

Thus Simms detailed the events leading up to the slaying, the physical acts thereof, and the subsequent conduct.

I. "The trial court erred to appellant's substantial prejudice in refusing to instruct the jury that Ricky Simms was an accomplice as a matter of law and on the necessity of corroboration of an accomplice's testimony."

All counsel and the trial judge proceeded throughout the trial under the presumption that Simms was a conspirator to the murder of Ronnie Jarvis. At the conclusion of all of the evidence, counsel for appellant moved the trial judge to make a determination that as a matter of law Simms was an accomplice and to so instruct the jury. Also, he requested that the trial judge instruct the jury that appellant could not be

convicted on the testimony of Simms alone; that it must be corroborated by other evidence tending to connect the appellant with the commission of the offense; and that the corroboration would not be sufficient if it merely showed that the offense was committed and the circumstances thereof. Appellant relied on RCr 9.62, which provides:

"Testimony of accomplice—A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. In the absence of corroboration as required by law, the court shall instruct the jury to render a verdict of acquittal."

The trial judge refused to so instruct the jury. The court only instructed on presumption of innocence, guilt or innocence of the accused, and that the verdict must be unanimous. The record reflects that while counsel and the trial judge were in chambers discussing the instructions to be given to the jury, the court made the following determination:

"Okay, I'm going to delete it Al. On this basis: I'm going to delete the one number four over Mr. Miller's objection on this basis: That since Ricky Simms has confessed that he is an accomplice as a matter of law, takes it out of the purview of the jury and that leaves the remaining part as a matter of law for the Court and in a similar situation to that in which the Court is called upon to consider motions for directed verdict and motions judgment n.o.v. Rightly or wrongly and show his objection."

Evidently, the trial court was laboring under the impression that it had the right and prerogative to determine whether the evidence was sufficient to constitute Simms an accomplice as a matter of law and also to determine as a matter of law whether the evidence met the standards prescribed by RCr 9.62, to negate the submission of the sufficiency of the evidence to

corroborate the testimony of Simms. This it did. In *Mouser v. Commonwealth*, Ky., 491 S.W.2d 821 (1973), in dealing with the necessity of instructions as to whether a person is an accomplice, we said:

"It first should be determined whether Priddy was an accomplice. A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. RCr 9.62. If Priddy was an accomplice as a matter of law, the court should have instructed the jury to that effect. * * If there was a reasonable doubt as to whether he was an accomplice, the jury should have determined the question under a proper instruction. * * * If as a matter of law Priddy was not an accomplice, the court should have declined to present the issue to the jury."

First of all, the trial judge found as a matter of law that Simms was an accomplice. With this we agree. Having made such a determination, the trial judge should have instructed the jury pursuant to the provisions of RCr 9.62, unless, however, there was sufficient evidence to convict appellant without the testimony of the accomplice Simms. In *Mishler v. Commonwealth*, Ky., 556 S.W.2d 676 (1977), the trial court had found as a matter of law that the relationship of accomplice existed and instructed the jury pursuant to RCr 9.62. It was therein contended that the question of being an accomplice should have been submitted to the jury. We wrote:

"* * * Ordinarily the instruction is given when the evidence for the Commonwealth is primarily that testimony given by the accomplice and other evidence of guilt is sparse. Here there was sufficient evidence to convict without the testimony of Henderson, which obviates the necessity for the accomplice instruction."

We need, therefore, to consider the quality of the evidence offered at the trial to determine whether it, without considering that given by the accomplice, is sufficient to convict. The sufficiency of the

evidence to convict is required to be of such quality that under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty. The evidence, other than that of the accomplice, discloses the following factual situation:

1. The death of Jarvis came about by reason of shotgun wounds to his head, neck and chest.

2. Jarvis owned six firearms:

a. A 30–0–6 Browning Belgian-built rifle.

b. A .20-gauge Herrington-Richardson topper shotgun.

c. A .16-gauge Browning automatic Belgian-built shotgun (sweet sixteen).

d. A .22-caliber Remington rifle.

e. A .22-caliber pistol with western style clasp.

f. A .20-gauge shotgun purchased at TBA store (double-barrel).

3. Appellant sold the 30–0–6 rifle to Ricky Jones on July 5, 1978, and gave him a .16 gauge shotgun to sell.

4. On July 24, 1978, Jones' wife surrendered the two guns to the sheriff's office.

5. Appellant had four of these guns in the trunk of his car prior to the killing of Jarvis (.22-caliber pistol, .22-caliber rifle, double-barrel shotgun and single-barrel shotgun). In making an effort to sell the guns, the appellant showed them to Tony Vincent. At that time two of the guns (pistol and rifle) were sold; the other two (double-barrel and single-barrel) were not sold but were retained by the appellant.

In the case at bar, it makes no difference how the four guns found their way into the trunk of appellant's car. They were there and under his control; that is the thing that counts. The double-barrel shotgun was not identified as the murder weapon. There was a hiatus between the time the appellant was displaying and trying to sell the murder weapons and the time when Ronnie Jarvis was killed. It is not necessary that every minute of the gap in time be accounted for. If that was so, the phrase from RCr 9.62, "(t)he corroboration is not sufficient if

it merely shows that the offense was committed and the circumstances thereof," would have no purpose.

The manner in which the guns came into appellant's possession and appellant's efforts to sell them are circumstances to be considered in deciding this issue. Nevertheless, without the evidence brought forth by Ricky Simms, the remaining evidence is not sufficient to support a conviction. We are of the opinion that the refusal of the trial judge to instruct under RCr 9.62 was error.

II. "The trial court erred to appellant's substantial prejudice in not directing a verdict of acquittal since there was no evidence corroborating the accomplice's testimony."

The second issue, therefore, is whether there was evidence other than that of the accomplice which tends to connect the appellant with the commission of the offense. In *Deskins v. Commonwealth*, Ky., 512 S.W.2d 520 (1974), this court, in dealing with the sufficiency of the evidence under RCr 9.62, said:

"* * * This court has consistently held that the corroborative evidence is not required to be so strong as to support a conviction by itself, but is sufficient if it has a tendency to connect the defendant with the commission of the offense. * * *"

We must ask ourselves whether, when looking at the evidence as a whole, would it be clearly unreasonable for a jury to find the appellant guilty under any possible theory?

The appellant had an alibi defense. He emphatically denied having killed Jarvis and brought forth witnesses who accounted for his time and whereabouts immediately prior to, during and immediately subsequent to the time of the murder.

In *Commonwealth v. Bowling*, Ky., 497 S.W.2d 720 (1973), we stated:

"The requirement of RCr 9.62 is met if the corroborative evidence is of such quality that a reasonable and unprejudiced mind can conclude that it tends to

establish some fact that links the accused up with the principal fact of the commission of the offense. * * *

Once the testimony of an accomplice is given a ring of truth by means of independent corroborative testimony, a conviction can rest upon the testimony of the accomplice alone. Thus it is unnecessary that the corroborative testimony establish guilt. It needs only to *tend* to connect the accused with the commission of the offense. * * * "

When we consider all of the evidence, that of the accomplice as well as that not of the accomplice, it is of such quality that connects the accused with the commission of the crime and supports the verdict. The trial court did not err in refusing to instruct the jury as requested by the appellant.

III. "Appellant was denied due process when the trial court omitted an essential element of the offense of murder in the instructions to the jury."

The appellant requested the court to instruct the jury that before the appellant could be found guilty of murder it must find that he was not acting under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse. The jury was not so instructed. The offense for which appellant was tried, murder, is defined as follows:

"507.020. Murder.—(1) A person is guilty of murder when:

(a) With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of man-

slaughter in the first degree or any other crime; or

(b) Under circumstances manifesting extreme indifference to human life, he wantonly engaged in conduct which creates a grave risk of death to another person and thereby causes the death of another person."

■ Instructions in a criminal prosecution must have a source within the framework of the evidence introduced at the trial. *Butler v. Commonwealth*, Ky., 560 S.W.2d 814 (1978); *Pilon v. Commonwealth*, Ky., 544 S.W.2d 228 (1977).

■ In the instant case, there is absolutely no evidence that the appellant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse. Ronnie Jarvis met his death at the hands of a cold, calculating murderer, acting under a prior conceived plan of action, who valued life at six guns and a favor to his friend Rickey Simms and Simms' concubine Carolyn Jarvis. Since there was no evidence that appellant acted under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse, under the circumstances as he believed them to be, there was absolutely no need for such an instruction to be given. The instructions given by the trial court were proper.

IV. "Appellant was denied a fair hearing in the sentencing phase of his trial when the trial court improperly allowed the introduction of his prior felony convictions."

This issue and the remaining issues are directed toward the sentencing portion of appellant's bifurcated trial.

KRS 532.025 provides as follows:

"Presentence hearings—Aggravating or mitigating circumstances—Instructions to jury.—(1)(a) Upon conviction of a defendant in cases where the death penalty may be imposed a hearing shall be conducted. In such hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of pun-

ishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any prior conviction and pleas: Provided, however, That only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible. The judge shall also hear argument by the defendant or his counsel and the prosecuting attorney, as provided by law, regarding the punishment to be imposed. The prosecuting attorney shall open and the defendant shall conclude the argument. In cases in which the death penalty may be imposed, the judge when sitting without a jury shall follow the additional procedure provided in subsection (2) of this section. Upon the conclusion of the evidence and arguments the judge shall impose the sentence or shall recess the trial for the purpose of taking the sentence within the limits prescribed by law. If the trial court is reversed on appeal because of error only in the presentence hearing, the new trial which may be ordered shall apply only to the issue of punishment.

(b) In all cases in which the death penalty may be imposed and which are tried by a jury, upon a return of a verdict of guilty by the jury, the court shall resume the trial and conduct a presentence hearing before the jury. Such hearing shall be conducted in the same manner as presentence hearings conducted before the judge as provided in paragraph (a) of this subsection. Upon the conclusion of the evidence and arguments, the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in subsection (2) of this section, exist and to recommend a sentence for the defendant. Upon the findings of the jury, the judge shall fix a sentence within the limits prescribed by law.

(2) In all cases of offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating or mitigating circumstances which may be supported by the evidence:

(a) Aggravating Circumstances:

1. The offense of murder or kidnapping was committed by a person with a prior record of conviction for a capital offense, or the offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions.

2. The offense of murder or kidnapping was committed while the offender was engaged in the commission of arson in the first degree, robbery in the first degree, burglary in the first degree, or rape in the first degree, or sodomy in the first degree.

3. The offender by his act of murder, armed robbery, or kidnapping knowingly created a great risk of death to more than one person in a public place by means of a destructive device weapon or other device which would normally be hazardous to the lives of more than one person.

4. The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value, or for other profit.

5. The offense of murder was committed by a person who was a prisoner and the victim was a prison employe engaged at the time of the act in the performance of his duties.

6. The offender's act or acts of killing were intentional and resulted in multiple deaths.

7. The offender's act of killing was intentional and the victim was a state or local public official or police officer, sheriff, or deputy sheriff engaged at the time of the act in the lawful performance of his duties.

(b) Mitigating Circumstances.

1. The defendant has no significant history of prior criminal activity.

2. The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance even though the influence of extreme mental or emotional disturbance is not sufficient to constitute a defense to the crime.

3. The victim was a participant in the defendant's criminal conduct or consented to the criminal act.

4. The capital offense was committed under circumstances which the defendant believed to provide a moral justification or extenuation for his conduct even though the circumstances which the defendant believed to provide a moral justification or extenuation for his conduct are not sufficient to constitute a defense to the crime.

5. The defendant was an accomplice in a capital offense committed by another person and his participation in the capital offense was relatively minor.

6. The defendant acted under duress or under the domination of another person even though the duress or the domination of another person is not sufficient to constitute a defense to the crime.

7. At the time of the capital offense the capacity of the defendant to appreciate the criminality of his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication even though the impairment of the capacity of the defendant to appreciate the criminality of his conduct or to conform the conduct to the requirements of law is insufficient to constitute a defense to the crime.

8. The youth of the defendant at the time of the crime.

(3) The instructions as determined by the trial judge to be warranted by the evidence shall be given in charge and in writing to the jury for its deliberation. The jury, if its verdict be a recommendation of death, shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt. In nonjury cases the judge shall make such designation. In all cases unless at least one of the statutory aggravating circumstances enumerated in subsection (2) of this section is so found, the death penalty shall not be imposed. (Enact. Acts 1976 (Ex. Sess.), ch. 15, Sec. 2, effective December 22, 1976.)"

During the guilt or innocence portion of appellant's trial, without objection from anyone, counsel for appellant and the appellant himself engaged in the following dialogue:

"Q. Johnny have you ever been convicted of a felony?

A. Yes, sir.

Q. When was that?

A. I believe the year is 1970.

Q. What was it?

A. Breaking and entering.

Q. How old were you then?

A. About twenty-four.

Q. Did you plead guilty to the charges?

A. Yes, sir.

Q. Appeared in Court one time and pled guilty to several counts of burglary, right?

A. Yes, sir."

■ Ordinarily, the trial judge, before admitting such evidence, would hold an in-chambers hearing to determine its propriety. *Cotton v. Commonwealth*, Ky., 454 S.W.2d 698 (1970). However, here the question was posed by one's own counsel. Such an in-chambers hearing was not necessary nor was it necessary for the judge to interpose.

After the appellant had been thoroughly interrogated by his own counsel, he was turned over to the Commonwealth's Attorney for cross-examination, during the course of which the record discloses the following interrogation:

"Upon cross-examination by Hon. Dan Cornette, Commonwealth's Attorney, the witness testified as follows:

Q. Did I understand you to say that you had been convicted of 'a' felony?

A. Three to be precise.

Q. Four to be precise isn't?

A. The charges I was sent to the penitentiary on, reform school in La-Grange, Kentucky, I believe it was three charges. It's been a long time ago I'm not too definite.

Q. All out of Jefferson County, Kentucky?

A. Yes, sir.

Q. One charge of dwelling house breaking?

A. Yes, sir.

Q. One charge of store house breaking?

A. Yes, sir.

Q. Another charge of dwelling house breaking?

A. Yes, sir.

Q. And a charge, the felony charge of possession of burglary tools.

A. I do not remember that charge.

Mr. Cornette: You stipulate it?

Mr. Miller: I stipulate that that's the correct number.

Q. Alright, your lawyer does.

A. Alright."

During the sentencing portion of the trial, the Commonwealth's Attorney used two witnesses, Joe Pruitt, a State Probation and Parole Officer, and Dr. James G. Bland, Facility Director, Forensic Psychiatry Services. The appellant used only one witness, Dr. Elya Bresler, a professional psychologist. Before proceeding with the sentencing portion, counsel for appellant objected to the use of his prior felony convictions on the ground that the Commonwealth's Attorney did not give prior notice of his intention to use them on the sentencing portion of the trial. The statute requires that "only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." The purpose of this requirement is to keep the accused fully knowledgeable of what evidence may be relied upon by the Commonwealth so that the accused can make whatever efforts he can to meet it. It was no surprise to appellant that his prior felony convictions were well known to the Commonwealth's Attorney, and this evidence was already presented to the jury on the guilt or innocence phase of the trial.

■ Appellant's criticism of the manner in which this evidence was brought before the jury is without merit for at least two reasons. First, the evidence of appellant's prior felony convictions was, without objections, brought to the knowledge of the jury on the guilt or innocence phase of the case and, secondly, the Probation and Parole Officer was presenting the records of appellant's prior convictions, copies of which had, about ten days prior to the trial, been furnished to counsel for appellant by the Commonwealth's Attorney. In all criminal proceedings where the death penalty is sought, the trial judge must conduct a bifurcated proceeding. The first proceeding is the guilt or innocence phase and the second is the sentencing phase. All evidence introduced in the first phase of the trial is admissible in the latter phase. New or additional evidence, when proposed to be used in aggravation, is that evidence which is required to be made known to the accused prior to the sentencing phase of the trial. KRS 532.025.

■ In the instant case, the same jury that tried the guilt or innocence phase of the trial was the jury that tried the sentencing phase. The trial judge permitted only such evidence as had been made known to the appellant prior to the trial. We find no fault with the action of the trial judge in this instance.

V. "The trial court erred to appellant's substantial prejudice and denied him due process of law in not directing a verdict on the aggravating factors since there was no evidence corroborating the accomplice's testimony."

■ The accomplice testified only in the guilt or innocence phase of this case. The evidence properly admitted on the first phase of the trial can be and is, without being further introduced in evidence, considered by the jury in arriving at its decision on the sentencing phase. In the event the sentencing phase of a trial is required to be before a new and different jury, then,

and in that event, there may be some justification or excuse to cause the evidence used on the first phase to be brought to the attention of the jury on the second phase of the trial, it not having had the advantage of having heard the evidence on which the jury predicated its verdict of guilty. There is no good reason to repeat to the same jury what it has already heard. The sentencing jury returned a verdict finding, "The defendant committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value or for other profit," and recommended that appellant be sentenced to death. Before making such a recommendation, the jury was instructed that it must believe beyond a reasonable doubt that the appellant committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value or for other profit. This was the finding of the jury.

The appellant argues that he is entitled to a favorable finding on the aggravating factors issue since there was no evidence corroborating the accomplice's testimony that would support such a finding. In other words, what appellant argues is that when the evidence brought forth in the guilt or innocence phase of the trial is added to the evidence brought forth in the sentencing phase, it would have been clearly unreasonable for the jury to find the punishment of death. This argument is without credence. We have heretofore opined that it would not have been clearly unreasonable for the jury to find the appellant guilty of murder when all of the testimony was considered. It was not necessary for the sentencing jury to consider only the evidence offered on the second phase of the trial to support its finding. In presenting aggravating or mitigating circumstances, neither the Commonwealth nor the accused is restricted in the use of the evidence which was brought forth on the first phase of the trial. It is the element of justification for the final sentence, as measured by the who, what, when, where, and why of the appellant as developed in both phases of the bifurcated proceeding.

In the instant case, we have no hesitation in finding that from all of the evidence presented to the jury, both in the guilt or innocence phase and in the sentencing phase, as required by KRS 532.025, the sentence imposed by it is supported by the evidence and is not clearly erroneous.

VI. "The trial court erred and denied appellant due process by refusing to give the instructions tendered by appellant at the presentence hearing."

KRS 532.025, which provides the guidelines for sentencing in a capital case, was adopted by the 1976 Extraordinary Session of the General Assembly. Appellant contends that in the sentencing phase of the trial, as well as in the guilt or innocence phase, the trial judge was required to give the RCr 9.62 accomplice instruction. The sentencing phase of the bifurcated trial is not in any way a proceeding in which there is a conviction. The conviction had already taken place. RCr 9.62 does not apply in the sentencing phase.

Counsel for appellant tendered instructions on the sentencing phase of the trial in which he sought to have the trial judge instruct the jury on the element of the presumption of innocence. The instructions were couched in such language that would, of necessity, have prohibited the jury from recommending the imposition of the death penalty. On the element of sentencing, the trial judge informed the jury as follows:

"You have tried the defendant and have returned a verdict of guilty of murder. From the evidence placed before you in that trial you are acquainted with the facts and circumstances of the crime itself. You will now receive additional evidence from which you shall determine whether there are mitigating or aggravating facts and circumstances bearing upon the question of punishment. After that you shall recommend a sentence for the defendant. In considering such evidence as may be unfavorable to the defendant, you will bear in mind the same

instruction that was given to you in the first stage of this trial proceeding to the effect that the law presumes a defendant innocent unless and until you are satisfied from the evidence beyond a reasonable doubt that he is guilty. You shall apply that same presumption in determining whether there are aggravating circumstances bearing on the question of what punishment should be adjudged against him in this case. Pursuant to the verdict returned by you finding the defendant guilty of murder and under the evidence presented to you in both stages of this trial proceeding you shall recommend to the Court one of the following three verdicts:

1. A term of twenty (20) years or more in the penitentiary.

2. A term of life imprisonment in the penitentiary.

3. Death."

Subsequently, the court instructed the jury in writing as follows:

"Instruction No. 1

Now, this is a very similar situation to yesterday. I am going to read you the law of the case. There will be a change in order of the arguments by the lawyers today. Today, Mr. Cornette will argue first and then Mr. Miller will argue. Then you will retire to the room with the written instructions and select one of your number as foreman again and then begin your deliberations.

This is the law of the case: Pursuant to the verdict returned by you finding the defendant guilty of murder and under the evidence presented to you in both stages of this trial, you shall recommend to the Court one of the following three verdicts:

1. A term of twenty years or more in the penitentiary.

2. A term of life imprisonment in the penitentiary.

3. Death."

"Instruction No. 2

The jury is instructed that you cannot recommend that defendant be sentenced to death unless you are satisfied from the evidence beyond a reasonable doubt that one of the circumstances listed in Instruction No. 3 is true in its entirety in which event you must designate in writing, signed by the foreman, which of the aggravating circumstances you found beyond a reasonable doubt to be true. If you believe both of the circumstances listed in Instruction No. 3 to be true you should so indicate on the appropriate form.

Instruction No. 3

AGGRAVATING CIRCUMSTANCES

In recommending a sentence for the defendant you shall consider the following if you believe from the evidence beyond a reasonable doubt to be true:

1. The offense of murder was committed while the defendant was engaged in the commission of robbery accomplished by the use of a shotgun, a deadly weapon.

2. The defendant committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value or for other profit.

If you believe either or both of the above numbered circumstances beyond a reasonable doubt you will so indicate on the appropriate verdict form.

Instruction No. 4

MITIGATING CIRCUMSTANCES

In recommending the sentence for the defendant you shall consider such mitigating or extenuating facts and circumstances as have been presented to you in the evidence including but not limited to the following if you believe from the evidence to be true:

1. The defendant has no significant history of prior criminal activity.

2. The capital offense was committed while the defendant was under the

influence of extreme mental or emotional disturbance even though the influence of extreme mental or emotional disturbance is not sufficient to constitute a defense to the crime.

3. The defendant was an accomplice in a capital offense committed by another person and his participation in the capital offense was relatively minor.

4. The defendant acted under duress or under the domination of another person even though the duress or the domination of another person is not sufficient to constitute a defense to the crime.

5. At the time of the capital offense the capacity of the defendant to appreciate the criminality of his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication even though the impairment of the capacity of the defendant to appreciate the criminality of his conduct or to conform the conduct to the requirements of law is insufficient to constitute a defense to the crime.

In addition to the foregoing, you should consider also those aspects of the defendant's character and record which were offered as evidence in mitigation of the penalty to be imposed and which you believe to be true. Also you should consider those facts and circumstances of the particular offense you have found him guilty of that were offered in evidence to mitigate the penalty to be imposed and which you believe to be true.

### Instruction No. 5

#### REASONABLE DOUBT

If you have a reasonable doubt as to the truth or existence of any one of the aggravating circumstances listed in Instruction No. 3 you shall not make any finding with respect to it. If upon the whole case you have a reasonable doubt whether the defendant should be sentenced to death you shall recommend a sentence of imprisonment instead.

### Instruction No. 6

The verdict of the jury must be unanimous and must be signed by the foreman who will be selected by you."

The jury returned its written recommendation that, "The defendant committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value or for other profit." The trial of this action commenced on September 26, 1978, and concluded on September 29, 1978, at which time RCr 9.56(2) provided that, "The instructions should not attempt to define the term 'reasonable doubt.'" The appellant complains that the trial court did not properly define "reasonable doubt." Counsel for appellant offered instructions in which "reasonable doubt" was attempted to be defined; however, the trial court refused to give them, and properly so.

The appellant argues that the trial judge should have (1) instructed the jury that it must consider any evidence of mitigating circumstances and (2) that it cannot consider any aggravating factors not enumerated in KRS 532.025(2). The court is not limited by the statutory definition of mitigating circumstances, but all evidence that would tend to excuse or alleviate appellant's responsibility is competent, and the court so instructed the jury. The court properly declined to instruct the jury that it could not consider any aggravating factors not enumerated in KRS 532.025(2). Such an instruction would have been improper.

The appellant argues that the Commonwealth must prove beyond a reasonable doubt the nonexistence of every statutory mitigating circumstance before the jury could find that such circumstance did not exist. The statute does not require such an onerous undertaking. The nonexistence of every mitigating circumstance is tantamount to a finding of not guilty on the principal offense. Counsel for appellant pits mitigating factors against aggravating factors. He tendered an instruction as follows, "If the weight of the mitigating circumstance(s) approaches or exceeds the

weight of aggravating circumstance(s), then you cannot sentence Johnny Marshall Smith to death by electrocution." As a matter of fact, each and every mitigating circumstance, by reason that it is mitigating, is pitted against aggravating circumstances. This is so in every case where one set of facts is pitted against the other, and the jury must decide whom to believe.

KRS 532.025(3) provides that such instructions should be given to the jury as are warranted by the evidence, and only one of the statutory aggravating circumstances is required to exist to justify a recommendation from the jury. So long as we have properly instructed jurors to weight the evidence in their deliberations, without the court having to encroach on their prerogatives, we do not need to instruct the jury on the weight of aggravating and mitigating circumstances.

Counsel for appellant further argues that if only one mitigating circumstance exists, the death penalty may not be imposed. Not so. The death penalty shall not be imposed unless at least one of the statutory aggravating circumstances is found to exist, not that if only one mitigating circumstance exists that the death penalty cannot be imposed.

Appellant's counsel tendered an instruction requiring the foreman of the trial jury to put in writing whether each mitigating circumstance exists or does not exist. KRS 532.025(3) provides in this respect, " * * * The jury, if its verdict be a recommendation of death, shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt. * * * " We are of the opinion that where the recommendation is death, then, and in that event, the jury shall designate in writing the aggravating circumstances which it found to exist beyond a reasonable doubt. We do not find that the court erred in this respect.

In view of the fact that the judgment of the Muhlenberg Circuit Court is being reversed and the case remanded for a new trial, we need not reach the issues of the propriety of the manner of the selection of the veniremen; nor whether the sentence of death was inappropriate in this case; not whether the imposition of the death penalty violates the Kentucky and the United States Constitutions; nor whether the trial judge exercised discretion in sentencing the appellant; nor whether the condition of the court record was deficient; nor whether the failure of the trial court to allow appellant access to data collected pursuant to KRS 532.075 was error.

No objections were made to the action of the Commonwealth's Attorney in introducing testimony that Simms, the coindictee, had been sentenced to 21 years in prison, to the introduction of testimony tending to show that the appellant worked at a bootleg joint, and to the comments of the Commonwealth's Attorney in his closing argument on the guilt and sentencing phases of the proceedings. In the absence of an issue being brought before the trial judge so that he would have an opportunity to pass on the competency of the question, the issue is not preserved for appellate review and there is no error. *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977); *Hopper v. Commonwealth*, Ky., 516 S.W.2d 855 (1974).

The judgment is reversed, and this action is remanded to the Muhlenberg Circuit Court for a new trial in keeping with this opinion.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENSON and STERNBERG, JJ., sitting.

PALMORE, C. J., and AKER, LUKOWSKY and STERNBERG, JJ., concur.

CLAYTON and STEPHENSON, JJ., dissent, and each files a separate dissenting opinion.

PALMORE, C. J., files a separate concurring opinion in which LUKOWSKY and STERNBERG, JJ., join.

CLAYTON, Justice, dissenting.

I disagree with the majority. One of the reasons behind RCr 9.62 is to prevent an accomplice from "pointing the finger" at the principal defendant and, by so doing, nullifying his own guilt. Professor Wigmore, in his treatise on evidence law, criticized the soundness of the accomplice rule when he wrote:

[T]he legislative creation of a rule of law, by introducing detailed refinements of definition to be applied by the jurors, has merely tended to confuse them with sounds of words, and to place in the hands of counsel a set of juggling formulas with which to practice upon the chance of obtaining a new trial. 7 Wigmore, *Evidence* § 2057 (Chadbourn rev. 1978).

Additionally, this court recognizes this technical rule to be so weak that we are tentatively disposed to abolish it.

This case does not present the appropriate legal context in which the rule becomes operative. There *was* evidence "tending to connect the defendant (appellant) with the commission of the crime" which corroborated the accomplice's testimony. Once this fairly minimal standard of corroboration has been met, as it was here, the question then becomes one of the accomplice's credibility in the eyes of the jury. And, as Wigmore points out, "credibility is a matter of elusive variety, and it is impossible and anachronistic to determine in advance that . . . a given man's story must be distrusted." 7 Wigmore, *supra.*

I would hold that under this particular fact situation the trial judge was in a better position to make the determination that he did and that he acted properly. I believe the court is mistaken in this case to substitute its judgment for that of the trial court. It is even a greater mistake when the case is this serious and the grounds for reversal are this thin.

I would affirm the judgment of conviction and the sentence of the trial court.

STEPHENSON, Justice, dissenting.

Ordinarily I would agree with the reversal of this case for failure to give an accomplice instruction. However, we have tentatively decided to abolish the accomplice rule after a lengthy period of reflection on the viability of the rule. The instruction the trial court failed to give would have, according to the rule, informed the jury that it could not convict on the testimony of the accomplice alone, that in addition there must be some other evidence *tending* to connect the crime. We have held as a matter of law that there is sufficient other evidence tending to connect the appellant with the crime. Thus, the jury did not convict on the accomplice testimony standing alone. Consequently, the failure of the trial court to give the accomplice instruction is a formal error with absolutely no prejudice to the appellant at all. With the accomplice rule being abandoned there is no longer a valid reason to enforce the giving of the instruction; accordingly, I would not reverse on this formal error.

PALMORE, Chief Justice, concurring.

It is regrettable that this case must be reversed on grounds that to a layman would appear merely technical.

RCr 9.62, the purpose of which is to prevent an accused from being convicted solely on the testimony of an accomplice without other evidence tending to connect him with the commission of the offense charged, has a long history of some 200 years. It was expressly made a part of our law by the General Assembly in 1854, and remained in the Code of Criminal Practice until carried into the Rules in 1963. Until fairly recent times it was rigorously enforced, in that it was invariably held a reversible error for the trial court not to instruct on it in any case in which there was evidence suggesting that a witness for the prosecution was an accomplice. *A fortiori,* when the witness was found as a matter of law to have been an accomplice it was absolutely necessary to instruct the jury not to convict on his testimony alone. That, of course, is this case.

Over the past few years the rule has been eroded to the extent that this court has declined to reverse for failure to instruct on the point when the corroborating evidence was strong enough to support a conviction without the accomplice testimony. That, unfortunately, is not this case.

The members of our court as presently constituted share Wigmore's misgivings regarding the soundness of the accomplice rule. We recognize also that recent decisions have fudged on it. Indeed, we are disposed to abolish it by eliminating the rule. Nevertheless, as of now it is the law, and it was the law when this man was tried. Though he may richly deserve the electric chair, those of us who join in reversing this judgment do so because the principle that a man or woman on trial has the right to be tried in accordance with the law is more important than any individual case. The accomplice rule may not be sound, and it may not be the law very much longer, but it was the law when this man was tried, and, for whatever it may be worth, he is entitled to its protection. Lukowsky and Sternberg, JJ., join in this concurring opinion.