**Robert Allen SMITH, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

**No. 90–SC–100–MR.**

Supreme Court of Kentucky.

Jan. 21, 1993.

Marie Allison, Oleh R. Tustaniwsky, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Ian G. Sonego, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

On January 24, 1990, appellant was convicted in McCracken Circuit Court of murder with the aggravating circumstance of arson in the first-degree. The trial court followed the recommendation of the jury and sentenced appellant to death.

The conviction stems from the murder of Pamela Wren (hereinafter Wren). Shortly after midnight on July 29, 1986, Phillip Wren, brother of the deceased Wren, discovered a fire in the upstairs apartment of his home. Wren and her son were living in the apartment. When the fire department responded to Phillip Wren's call it was ascertained that the only person in the upstairs apartment was Wren. Wren's son, Toby, had spent the night with a friend who lived across the street. Upon discovering Wren, a firefighter determined that she was dead.

An autopsy revealed that Wren's cause of death was smoke inhalation as a result of the fire. The coroner also determined that Wren was in a pre-comatose or comatose state at the time of the fire due to an extreme level of alcohol intoxication, 0.39 percent blood alcohol level. There was no evidence of significant trauma to Wren's body, nor was there evidence of sexual intercourse.

Paducah City Fire Marshal Terry Keeling and Kentucky State Police Investigator Don Senf concluded that there were three points of origin of the fire within the apartment. They both opined that the three fires were definitely set individually and were not the result of an accident.

The Commonwealth proved its case against appellant by circumstantial evidence. Appellant was identified as being with Wren on the day before the fire. Ap-

pellant was also identified as the man who had approached Wren several times in a bar on the Saturday preceding the day of the fire. The emergency 911 dispatchers received three telephone calls in which each caller sought information about the fire at Wren's apartment and about the occupant of the residence. Several individuals, after listening to the tapes of these calls, identified the voice of each separate call on the emergency dispatch tapes as being that of appellant. Appellant's handwriting was identified as being on a letter in which threats were directed against a Commonwealth's witness regarding her expected testimony. Appellant admitted to a fellow inmate that he had killed Wren by setting two or three fires in her home.

Appellant raises 39 points of error in his appeal as a matter of right. After having examined all the issues carefully, we find the issues raised affecting the guilt phase of the trial do not merit discussion, but that two issues merit reversal of the penalty phase of appellant's trial.

I. WHETHER THE TRIAL COURT ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY ALLOWING THE CASE TO PROCEED AS A CAPITAL CASE WHEN THE COMMONWEALTH AND DEFENSE COUNSEL BOTH BELIEVED THAT THE CASE WOULD NOT BE TRIED AS A CAPITAL CASE UNTIL SIX DAYS BEFORE THE TRIAL.

Because the circumstances surrounding the giving of the notice of intent to seek the death penalty rendered the notice inadequate and unfair, appellant alleges that the trial court erred to appellant's substantial prejudice by failing to dismiss the death penalty as a possible sentence or by failing to grant a reasonable continuance in order for appellant's counsel to prepare a death penalty defense.

■ Appellant was indicted on July 14, 1987. He was represented by his first attorney until November 24, 1987, when she moved to withdraw as counsel. His second counsel was substituted as counsel on January 5, 1988. On February 18, 1988, pursuant to KRS 532.025, the Commonwealth filed a Notice of Aggravating Factors (hereinafter Notice) in which notice was given that the Commonwealth would prove that the murder was committed while appellant was engaged in the aggravating factor of first-degree arson.

Appellant's case went to trial on November 6, 1989. Between the time the Notice was filed and the actual trial date, the Commonwealth and defense counsel conferred numerous times in a manner indicating that the Commonwealth was not seeking the death penalty. It is undisputed that both the Commonwealth and defense counsel had forgotten that the Notice had been filed in 1988.

Three weeks before trial the Commonwealth verbally advised defense counsel that the Commonwealth *intended to file* a Notice within twenty days prior to trial. At six days before trial the Commonwealth believed that it was too late to file a Notice. However, he "looked in [his] file, and saw it [the 1988 Notice] was there to my utmost delight."

Defense counsel moved to prohibit the Commonwealth from pursuing the death penalty because (1) both parties had been treating the case as non-capital, and (2) defense counsel could not properly prepare a defense to a capital case with only six days' notice.

Because we agree that defense counsel was given inadequate notice that the Commonwealth would seek the death penalty, this Court reverses and remands as to the penalty phase only.

■ As previously acknowledged, both the defense counsel and the Commonwealth regarded appellant's trial as a non-capital case until six days before trial. The Commonwealth represented to defense counsel that no notice had been filed. Defense counsel had a right to rely on the express representations of the Commonwealth without searching through his files to determine if the Commonwealth's statements were valid. The Commonwealth's Attorney is under a strict obligation to see that every defendant receives a fair trial.

*Johnson v. Commonwealth,* Ky., 609 S.W.2d 360 (1980). This Court stated in *Workman v. Commonwealth,* Ky., 580 S.W.2d 206, 207 (1979) that "our historical ideals of fair play and substantial justice do not permit attorneys for the Commonwealth to disregard promises and fail to perform bargains". In the case at bar, by representing that the Commonwealth was not seeking the death penalty, a promise and a bargain was made. The Commonwealth could not later disregard its earlier representations. "If the government breaks its word, it breeds contempt for integrity and good faith. It destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations." *Id.*

The issue before us is analogous to the situation in which the Commonwealth makes a plea bargain offer and the defendant relies upon this offer. We have stated that if the offer is made by the prosecution and accepted by the accused, either by entering a plea or by taking action to his detriment in reliance on the offer, then the agreement becomes binding and enforceable. *Commonwealth v. Reyes,* Ky., 764 S.W.2d 62, 65 (1989).

In the instant case, the Commonwealth represented that it was proceeding with the trial as a non-capital case. Appellant relied to his detriment on this offer by his failure to prepare for a capital case.

The United States Supreme Court has "repeatedly emphasized the importance of giving the parties sufficient notice to enable them to identify the issues on which a decision may turn." *Lankford v. Idaho,* — U.S. —, — n. 22, 111 S.Ct. 1723, 1732 n. 22, 114 L.Ed.2d 173 (1991).

In *Lankford,* the United States Supreme Court held that a defendant's due process rights had been violated where the defendant and his counsel did not have adequate notice that the judge might sentence the defendant, Lankford, to death. Prior to sentencing, the State had filed a negative response to whether it would seek the death penalty. *Id.* at —, 111 S.Ct. at 1724. However, at the conclusion of the

sentencing hearing, the trial judge sentenced the defendant to death. *Id.*

While *Lankford* is factually distinguishable from the present case, the basic premise of *Lankford* remains applicable. In both *Lankford* and the case at bar, there was inadequate notice that the death penalty would be imposed. The fact here that appellant had notice six days before trial, whereas Lankford had zero notice does not necessarily distinguish the two situations. Six days' notice is inadequate notice to prepare for the guilt phase of a capital trial.

> If notice is not given, and the adversary process is not permitted to function properly, there is an increased chance of error, and with that, the possibility of an incorrect result.... Petitioner's lack of adequate notice ... created an impermissible risk that the adversary process may have malfunctioned in this case.

*Id.* at —, 111 S.Ct. at 1733. In the instant case the inadequate notice led to inadequate preparation for the penalty phase of the trial. It has long been held in Kentucky that the constitutional right to be represented by counsel includes the right to have reasonable time and opportunity for preparation. *Davis v. Commonwealth,* 310 Ky. 360, 220 S.W.2d 844 (1949). If defense counsel is not given adequate time in which to prepare for the penalty phase of a capital trial, the adversarial system has most certainly malfunctioned.

During the guilt phase of appellant's trial, appellant attacked the credibility of the prosecution's witnesses and attempted to demonstrate that persons other than the appellant had a motive to cause the death of Pamela Wren. In other words, appellant attempted to create a reasonable doubt in the minds of the jurors as to appellant's guilt. Whether a defendant faces a term of years or a sentence of death, during the guilt phase the issue of reasonable doubt remains the same. Thus, appellant was not harmed by the inadequate notice in regards to this phase of his trial. Thus, we reverse only as to the penalty phase.

In the penalty phase of a capital case, defense counsel attempts to convince the jury that the death penalty is an improper punishment. It is at this phase of the trial that a lack of adequate notice becomes violative of appellant's constitutional rights. It is impossible for counsel to prepare proper motions, evidence and witnesses for the penalty phase of a capital case with only six days' notice that the case is a capital one. To require defense counsel to do so is grossly prejudicial and is an egregious error.

## II. WHETHER THE TRIAL COURT ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY FAILING TO INSTRUCT THE JURY ON MITIGATING CIRCUMSTANCES.

■ Appellant contends that the trial court's failure to provide the jury with any instruction relating to the concept of mitigating evidence violated appellant's right to individualized sentencing and to due process, and resulted in cruel and unusual punishment in violation of Amendments 8 and 14 of the United States Constitution and Sections 2, 11 and 17 of the Kentucky Constitution. We agree that the lack of an instruction regarding mitigation was violative of appellant's due process rights. Due to such error, this Court again would reverse the penalty phase of appellant's trial.

Case law from the United States Supreme Court supports our decision. United States Supreme Court cases *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) make it clear that a state cannot, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to circumstances of the offense that mitigates against imposing the death penalty. The principle underlying these two cases is that punishment should be directly related to the personal culpability of the criminal defendant. "[E]vidence about the defendant's background and character is relevant because of the belief, long held by this

society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (concurring opinion).

In *Penry v. Lynaugh*, 492 U.S. 302, 327–28, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989), the United States Supreme Court stated:

"In contrast to the carefully defined standards that must narrow a sentencer's discretion to *impose* the death sentence, the Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence." (emphasis in original). Indeed, it is precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense. Rather than creating the risk of an unguided emotional response, full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a " 'reasoned *moral* response to the defendant's background, character, and crime.' " In order to ensure "reliability in the determination that death is the appropriate punishment in a specific case," the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime. (Citations omitted.)

The *Penry* Court found that the absence of instructions regarding mitigating evidence of Penry's mental retardation and abused background prevented the jury from being provided with a vehicle for expressing its "reasoned moral response" to the mitigating evidence in rendering its sentencing decision. *Id.* at 328–29, 109 S.Ct. at 2952. The *Penry* Court then concluded that the "reasoning in *Lockett* and *Eddings* thus compels a remand for resen-

tencing so that we do not 'risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.'" *Id.* (Citations omitted.)

■ In promulgating KRS 532.025(2) the legislators of Kentucky recognized the dire necessity of having jurors consider mitigating circumstances when the death penalty might be imposed. KRS 532.025(2) states in a pertinent part:

In all cases of offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating or mitigating circumstances which may be supported by the evidence.

The language of the statute clearly states that the judge *shall* include instructions to the jury regarding mitigating circumstances. The trial court's failure to do so constituted an error to the substantial prejudice of appellant.

■ However, the Court is not required to give a mitigation instruction unless the mitigating circumstances are supported by evidence. The United States Supreme Court in *Lockett v. Ohio, supra,* stated:

we conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense *that the defendant proffers as a basis for a sentence less than death....* Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense. *Lockett,* 438 U.S. at 604, n. 12, 98 S.Ct. at 2964, 2965, n. 12. (Emphasis added.)

In *Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980), there was no evidence that appellant acted under the influence of extreme emotional disturbance for which there was a reasonable justification or ex-

cuse when he shot a man to death. Because of the lack of evidence, this Court found that there was absolutely no need for an instruction on extreme emotional disturbance to be given. *Smith* at 905. "Instructions in a criminal prosecution must have a source within the framework of the evidence introduced at the trial." *Id.*

During the penalty phase neither appellant nor the Commonwealth presented any proof. However, throughout the trial, appellant introduced evidence which supported his requests for instructions on mitigating circumstances. The relevant statutory mitigating factors in KRS 532.-025(2)(b) are: (1) the capital offense was committed while appellant was under the influence of extreme mental or emotional disturbance; and (2) at the time of the capital offense appellant's capacity to appreciate the criminality of his conduct was impaired as a result of mental illness or retardation or intoxication.

■ Through various witnesses, evidence of extreme emotional disturbance was introduced into appellant's trial. At the time of Wren's death, appellant was a twenty-nine year old man who had been married and divorced three times. A few months prior to Wren's death, appellant's son died and appellant divorced for the third time. Appellant became despondent and turned to liquor and Wren for consolation when he realized his attempts at reconciliation with his third wife were futile. During the period before Wren's death, Wren rejected and "spurned" appellant numerous times. This evidence supports a mitigating instruction as to extreme emotional disturbance.

■ Appellant's irrational behavior at trial, his inability to maintain relationships, his frequent threats to kill people, his speech defect and the difficulty he had formulating thoughts and words and expressing them, and the fact that he was only able to finish the eighth grade was the evidence introduced which supports a mitigation instruction on appellant's mental illness or retardation. Evidence supporting

an instruction on the mitigating circumstance of intoxication included testimony that Wren and appellant drank together, as well as testimony that numerous beer cans were found in Wren's apartment on the night of her death. After such evidence was presented to the jury, the jurors were entitled to an instruction which would permit them to determine whether appellant's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirement of the law was impaired as a result of mental illness, retardation or intoxication, even though such impairment was insufficient to constitute a defense to murder.

KRS 532.025(2) also requires that the trial judge include an instruction on any mitigating circumstances authorized by law. Appellant was entitled to an instruction informing the jurors that they could consider evidence presented to them as a mitigating factor when determining the appropriate sentence for appellant.

For the foregoing reasons we affirm the guilt phase of appellant's trial, but reverse and remand for a resentencing hearing to be conducted consistent with this opinion.

COMBS, LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

WINTERSHEIMER, J., dissents in a separate dissenting opinion in which SPAIN, J., joins.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from that part of the majority opinion which determines that it was reversible error for the trial judge to fail to instruct the jury on mitigating circumstances during the penalty phase of the trial.

My examination of the record indicates that the trial judge properly determined that Smith was not entitled to have the jury instructed on mitigating circumstances during the penalty phase because there was no evidence to support such an instruction. K.R.S. 532.025(2) provides that instructions on mitigating or aggravating circumstances must be supported by evidence. Here the trial judge correctly concluded that there was no evidence to support such an instruction.

The trial judge asked the defense counsel whether there were any objections to the instruction and he was advised that there were no objections.

This Court has previously affirmed decisions by trial judges not to instruct juries on particular mitigating circumstances. *Cf. Halvorsen & Willoughby v. Commonwealth*, Ky., 730 S.W.2d 921 (1986). The United States Supreme Court has held that the defendant in a death penalty case may be required to prove the existence of mitigating circumstances to avoid the death penalty. *Walton v. Arizona*, 497 U.S. 639 at 650, 110 S.Ct. 3047 at 3055, 111 L.Ed.2d 511 at 525 (1990).

In upholding the Pennsylvania death penalty statute, the U.S. Supreme Court noted in *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), that the death penalty is imposed only after a determination that aggravating circumstances outweigh mitigating circumstances, or that there are no such mitigating circumstances. This was held to be sufficient under *Lockhart v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The evidence in this case does not indicate that Smith was acting under any form of extreme emotional disturbance. *Wellman v. Commonwealth*, Ky., 694 S.W.2d 696 (1985) provided that the evidence must establish that at the time of the homicide, there was some event, act, words or the like to arouse extreme emotional disturbance. This Court has frequently held that the event which triggers the explosion of violence on the part of the defendant must be sudden and uninterrupted. *Foster v. Commonwealth*, Ky., 827 S.W.2d 670 (1992).

It is interesting to note that the instructions tendered to the trial judge by defense counsel omit any reference to extreme emotional disturbance.

There was no evidence of probative value presented in this case that Smith actually suffered from mental illness or retardation

as defined in K.R.S. 504.060. The defendant's irrational behavior at trial is not enough to support a claim of reversible error on the failure to give mitigating instructions. Mental illness or retardation does not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct. K.R.S. 504.020(2).

There is no evidence in this case that the defendant was intoxicated to the extent of impairing his ability to appreciate the criminal nature of his conduct or that intoxication was any factor. *See Stanford v. Commonwealth*, Ky., 793 S.W.2d 112 at 117 (1990). There were no mitigating circumstances authorized by law which entitled the defendant to an instruction in the penalty phase in this case.

In addition, I do not believe that Smith was unduly prejudiced or misled regarding the intention of the prosecution to seek the death penalty. The proper notice had been filed and was in the record.

SPAIN, J., joins in this dissent.