**John Norman COLLINS, Petitioner-Appellant,**

v.

**Charles EGELER, Warden of the State Prison of Southern Michigan, Respondent-Appellee.**

No. 75–2234.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1976.

Decided July 27, 1976.

Certiorari Denied Oct. 12, 1976. See 97 S.Ct. 244.

Neil H. Fink, Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Robert A. Derengoski, Thomas L. Casey, Lansing, Mich., William F. Delhey, John J. Hensel, Chief, Appellate Div., Ann Arbor, Mich., for respondent-appellee.

Before PHILLIPS, Chief Circuit Judge, McCREE, Circuit Judge, and GREEN *, Senior District Judge.

BEN C. GREEN, Senior District Judge.

This is an appeal from the dismissal of a petition for writ of habeas corpus. Petitioner is confined in the State Prison of Southern Michigan serving a life sentence upon his conviction by a jury of murder in the first degree.

The sole question presented is whether petitioner was denied due process of law by reason of the denial of requests for change of venue. Petitioner's contention is that the pre-trial publicity attendant upon the charge against him was so pervasive and so prejudicial that he could not receive a fair trial in Washtenaw County, Michigan at the hands of jury drawn from residents of that area. There is no claim advanced that the circumstances of the trial itself were such as to invade any constitutionally protected

* The Honorable Ben C. Green, Senior District Judge, for the Northern District of Ohio, sitting by designation.

right. *Cf., Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

Over a period of approximately two years commencing in July, 1967 seven young women residing in the areas of Ann Arbor and Ypsilanti, Michigan were murdered. Several of the homicides had sexual implications. All victims were found within a fifteen-mile triangular area. On August 1, 1969 petitioner was arrested and charged with the murder of the seventh victim, who had disappeared on July 23, 1969.

There is no question but that the killings generated substantial publicity as they occurred. Likewise, there was extensive media publicity at the time of petitioner's arrest.

In April, 1970 petitioner was indicted for the murder of a young woman in Monterey County, California. That event received extensive media coverage in the Washtenaw County area.

Five motions for change of venue were filed by petitioner's counsel.

On the third of such motions an evidentiary hearing was held on April 20, 1970. At that hearing a psychologist retained by the defense testified that, based on a survey made under his direction, in his opinion there was but a slim chance of an unbiased jury being obtained in Washtenaw County. Ruling was reserved on that motion until such time as an effort was made to secure a jury.

Jury selection commenced on June 2, 1970, upon which date the fourth motion for change of venue was made. The *voir dire* extended from June 2 through July 9, 1970. The fifth motion for change of venue was denied on June 29, 1970. At the time the fourteen members of the jury were finally seated defense counsel had three peremptory challenges remaining.

The issue raised in this proceeding has previously been reviewed by the Michigan courts, *People v. Collins,* 43 Mich.App. 259, 204 N.W.2d 290 (1972), *leave to appeal denied,* 391 Mich. 798 (1974), *cert. denied,* 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974),

and by Judge Thornton below, 395 F.Supp. 629 (1975), each of whom concluded that the refusal to order a change of venue was not error.

The state court affirmed the Michigan practice of deferring ruling on a change of venue until an attempt has been made to select a jury from the county where the crime occurred, *People v. Swift,* 172 Mich. 473, 138 N.W. 662 (1912), and held that the trial court's finding that "there was no strong community feeling or a pattern of deep and bitter prejudice against [the] defendant" would not be set aside and that "the record does not demonstrate that defendant had an unfair trial by a partial jury," 43 Mich.App. at 263, 204 N.W.2d at 292.

Judge Thornton entered an extensive memorandum opinion in the course of which he considered in detail the facts pertinent to this proceeding. He concluded that under the totality of the circumstances the failure to grant a change of venue did not violate the principles laid down by the Supreme Court in *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Sheppard v. Maxwell, supra; Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), and *Irwin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). He specifically found that there was a sharp decline in the news coverage from the end of October, 1969 to the time of trial and that:

> . . . the publicity on the whole was [not] hostile or bitterly massed against the petitioner. While some newspaper articles sought to connect him with the other murders, articles favorable to the petitioner did appear, and a great many were examples of straightforward newspaper reporting.

It has been urged that even assuming a lack of specific evidence of prejudice against petitioner the climate in the Ann Arbor-Ypsilanti area was so poisoned and that transfer would have been such a simple expedient that the failure to order such

transfer should not be countenanced. While there is no doubt that transfer of a criminal case which has received a great deal of local publicity will often obviate later problems, in this case it is problematical whether such would have been the result. Judge Thornton's opinion notes:

> We are keenly conscious of the difficulty of the task of seating an impartial jury in this case but are constrained to observe that a jury impaneled in any other Michigan county would not have been any less familiar with the events involving the accused since the Detroit newspapers, which are widely circulated throughout the state, carried the major volume of the publicity. In addition, Ann Arbor and Ypsilanti have large student populations drawn from all parts of the state. Fears for the safety of women students in Ypsilanti or Ann Arbor would, therefore, affect residents of other counties; thus the series of murders was not a uniquely local problem.

The standard against which the record herein must be measured is that of due process rather than the less stringent rules which apply in the exercise of supervisory powers in federal actions. *Murphy v. Florida, supra,* 421 U.S. at p. 803, 95 S.Ct. 2031 (Burger, C. J., concurring). From the record presented to this court we find no basis to disturb the conclusions of the district court, the state court of appeals and the state trial judge that petitioner was tried by a fair and impartial jury. The dismissal of the petition for writ of habeas corpus is affirmed.