COMMONWEALTH of Kentucky,
Movant,

v.

Phelan CROOKS, Respondent.

Phelan CROOKS, Movant,

v.

COMMONWEALTH of Kentucky,
Respondent.

Supreme Court of Kentucky.

July 6, 1983.

Rehearing Denied Sept. 21, 1983.

Jack Emory Farley, Public Advocate, Larry H. Marshall, Asst. Public Advocate, Frankfort, for movant, Crooks.

Steven L. Beshear, Atty. Gen., W. Bruce Cowden, Asst. Atty. Gen., Frankfort, for respondent, Commonwealth.

LEIBSON, Justice.

Phelan Crooks was convicted in Fayette Circuit Court of knowingly receiving stolen property. The jury recommended a sentence of three and one-half (3½) years imprisonment, which the trial court imposed.

Then, in the second phase of a bifurcated proceeding, Crooks was also found guilty by the jury of being a persistent felony offender in the first degree, but the jury was unable to agree upon a verdict.

Ultimately, the jury sent the trial judge a note saying that they had reached a unanimous decision that Mr. Crooks was "guilty," but they were unable to reach a unanimous decision on the penalty to be imposed. Thereafter, the trial judge directed that the jury return its "verdict of guilty" in open

court and that he would fix the penalty. The jury returned with the following verdicts written on the form provided:

"(b) We, the jury, find the defendant guilty.

Foreman /s/ Allen W. Richards

The jury is deadlocked as to the punishment to be imposed.

/s/ Allen W. Richards"

After the jury was discharged, upon motion of the Commonwealth and over the objection of Crooks, the trial court then imposed the minimum sentence authorized for a person who stands convicted of a Class C or Class D felony, who is then convicted as a persistent felony offender in the first degree, which is ten (10) years imprisonment. KRS 532.080(6)(b).

On appeal, the Kentucky Court of Appeals held: (1) that in the absence of a recommendation by the jury, the trial court erred in fixing Crooks' punishment on the persistent felony offender charge and (2) that the jury's failure to agree upon an appropriate penalty is tantamount to a mistrial and thus does not prevent Crooks' retrial as a first-degree persistent felon.

Both Crooks and the Commonwealth sought discretionary review by this Court. We granted their motions and now affirm the decision of the Court of Appeals in all respects.

■ First we consider whether it was proper for the trial court to impose the minimum penalty for Crooks when the jury found guilt but failed to agree upon punishment. We agree with the Court of Appeals that this was reversible error and adopt the following from the opinion by Judge Howerton as an appropriate statement of the law:

"Although at first blush it seems logical that there can be no prejudicial effect if the court imposes a minimum sentence, we must nevertheless agree that it is legally impermissible for the trial court to do this. KRS 532.080 specifically provides that the jury 'shall' fix the sentence to be imposed in a PFO conviction. The statute and the commentary require the

jury not only to find guilt but to fix the sentence. It is only after the jury has fixed the penalty that the judge may proceed to enter judgment sentencing the defendant . . . (citation omitted).

". . . (I)n PFO proceedings, the finding of guilt and the fixing of an appropriate sentence are inextricably linked, and no final action has been taken until the jury performs both functions."

Having decided that the trial court lacked authority to sentence Crooks as a persistent felony offender in the absence of the jury's recommendation as to punishment, we must now consider whether he is subject to retrial on the charge. We conclude that he can properly be retried.

■ A defendant is not placed in double jeopardy when retried for the same offense after the jury in the first trial has been unable to make a determination as to guilt or punishment. *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977); *Cornwell v. Commonwealth,* Ky., 523 S.W.2d 224 (1975). The logic of this rule is even more compelling in the present case where the jury found Crooks guilty of both the principal offense and the status offense but simply deadlocked on the overall penalty to be imposed. However, Crooks contends we cannot follow the same rule on the additional charge of being a persistent felony offender because of certain language in the Commentary to the Penal Code.

■ The Commentary is advisory (KRS 500.100). In this instance it gives bad advice. We see no reason to believe that the legislature intended the incongruous result that the Commentary to KRS 532.080 suggests. The last sentence in the Commentary states: "If the jury is unable to agree unanimously that the defendant is a persistent felony offender or as to the sanction to be imposed upon him the sentence fixed by the jury under KRS 532.060 (for the primary offense) shall stand." But this is a gratuitous addition to the section on "Persistent Felony Offender Sentencing" rather than an appropriate explanation of anything contained in that section.

The persistent felony offender sentencing statute, KRS 532.080, contemplates that it may be appropriate to try the defendant separately and at a later time on the persistent felony offender charge. It states, "Such proceeding shall be conducted before the court sitting with the jury that found the defendant guilty of his most recent offense unless the court for good cause discharges that jury and impanels a new jury for that purpose." When the jury was unable to agree upon a sentence as to the persistent felony offender charge, it was discharged "for good cause." In conformity with that statute a new jury should now be impaneled to consider the persistent felony offender charge.

To follow the Commentary we would reach this bizarre result: at the same time the defendant is both guilty and acquitted. The legislature did not intend such a result. To quote Judge Henry Friendly of the United States Court of Appeals, Second Judicial Circuit, "guilt is not irrelevant."

Crooks has raised four additional issues on this appeal, each of which we believe were properly resolved by the Court of Appeals.

We affirm the decision of the Court of Appeals in all respects.

LEIBSON, STEPHENSON and WINTERSHEIMER, JJ., and WILLIAM L. SULLIVAN, Special Justice, concur.

HOBGOOD, BYRON L., Special Justice, files a dissent in which STEPHENS, C.J., and AKER, J., join.

HOBGOOD, Justice, dissenting.

I agree with the majority that the action of the trial court in imposing a ten year sentence was reversible error. However, on the complimentary issue of whether Mr. Crooks should be retried on the first degree persistent felony offender offense I respectfully disagree with the majority.

The offense of persistent felony offender is set forth in KRS 532.080 of the Kentucky Penal Code.

To find the intent of the General Assembly on the issue in the instant case, a review of the history of the Kentucky Penal Code and its commentary is necessary.

The present penal code and commentary evolved from a document known as the *Kentucky Penal Code Final Draft* dated November 1971 which included a commentary. In its Introduction, that document states:

"Knowing that the laws governing criminal procedures had been reworked and enacted by the 1962 legislature, the 1968 General Assembly ordered a revision of the state's substantive criminal laws. The Kentucky Crime Commission and the Legislative Research Commission were ordered to do the job.

For more than three years, the two commissions worked together to prepare the historic revision. First, the Crime Commission prepared a two-volume outline identifying problems and legal issues. Then the Legislative Research Commission and the Crime Commission jointly named a distinguished 12-member advisory panel.

Panel members were chosen on recommendation of the presidents of such statewide groups as the Kentucky Bar Association, Commonwealth's Attorneys Association, County Attorneys' Association, Kentucky Judicial Conference and the County Judges Association.

In addition, the late Morris C. Montgomery, Chief Justice of the Kentucky Court of Appeals, chose Judge John S. Palmore to serve as chairman of the panel. Law school deans from the University of Louisville and the University of Kentucky were also asked to serve.

Panel members were aided in the drafting of the law revision by a team of legal scholars. The Approach was thorough. Painstaking research was done. Proposed drafts were written, rewritten and rewritten again. Regular work sessions were held and a word-by-word examination made of every proposal.

The Model Penal Code, prepared by the American Law Institute from 1953 to 1962, was used extensively. Recent crim-

inal law revisions by several states were also used, for revision in a growing movement. Some one dozen states have already enacted revised codes, 15 others have completed the revision process.

Haste was avoided. The research, the scholarship-the debates to assure fairness to all Kentuckians—continued for more than three years.

Now the task is done. This Penal Code for Kentucky is ready for submission to the 1972 General Assembly.

... The code is now being prepared in bill form for introduction to the General Assembly. The bill will not contain the commentary. It is anticipated that although the code will be put into the regular Kentucky Revised Statutes style upon enactment, the present format will be retained as much as possible."

The Penal Code bill was not enacted until the 1974 General Assembly. As enacted, the bill did not contain the 1971 commentary. However, it did contain the following language:

"KRS 500.100. The commentary accompanying this Code may be used as an aid in construing the provisions of this Code."

In the Banks-Baldwin Law Publishing Company edition of the Kentucky Revised Statutes, KRS 500.100 has the following commentary after the text of the statute:

"The Commentary for this Penal Code is intended to explain its provisions and to aid in interpreting them. It should be noted, however, that the language of the sections themselves constitute the authoritative statement. The Commentary is not an authoritative statement, but is evidence of the considerations that went into the drafting of the statutes. The Commentary may be helpful in cases of ambiguity as a means of interpreting the provisions of this Penal Code."

KRS 500.100 evolved from § 150 of the 1971 proposed Penal Code which stated, "§ 150. The commentary accompanying this code may be used as evidence of legislative intent, and as an aid in construing the provisions of this code in the event of ambiguity."

Section 150 of the 1971 proposed Penal Code was followed by a commentary that stated,

"The commentary on this Penal Code is intended to explain its provisions and to aid in interpreting them. It should be noted, however, that the language of the sections themselves was specifically approved by the Advisory Committee and is the authoritative statement. The commentary is not an authoritative statement, but is evidence of the considerations that went into the drafting of the statutes. The commentary may be helpful in case of ambiguity as a means of interpreting the provisions of this Penal Code."

To resolve the issue of interpretation of KRS 532.080, one looks to both the proposed code and commentary and the enacted code and commentary.

By comparing the 1974 enacted Penal Code with the 1971 proposed Penal Code, one sees that KRS 532.080 is the progeny of § 3440 and § 3445 of the 1971 proposed Penal Code.

The commentary for § 3445 of the proposed Penal Code provided:

"Finally, it should be noted that this section required that the determination of whether or not an offender is a persistent felony offender be made in a separate proceeding. This is an essential part of the provision if unfair influence upon the question of guilt or innocence of the most recent offense is to be avoided. It is anticipated that the procedure under this section would be as follows: The defendant would be tried for his present offense and if convicted would be sentenced by the jury in accordance with the provisions of Section 3430. Immediately thereafter, a special proceeding would be commenced before that same jury for the purpose of determining whether he should be designated as a persistent felony offender and sentenced under Section 3445. If the prosecution proves that he is a persistent felon, as that label is defined in this section, and the jury so finds, then the de-

fendant is to be resentenced by the jury in accordance with the limitations established by Subsection (4). If the jury is unable to agree unanimously that the defendant is a persistent felony offender or as to the sanction to be imposed upon him the sentence fixed by the jury under Section 3430 shall stand."

Under the § 3345 commentary, the issue is resolved. Unless guilt and sanction are fixed by the jury, the sentence on the primary charge is the one given.

After the 1974 Kentucky Penal Code was enacted, the Kentucky Department of Justice, the Legislative Research Commission and Banks-Baldwin Law Publishing Company rewrote the original 1971 Penal Code commentary to conform to the Penal Code as finally amended and enacted by the 1974 General Assembly.

The rewritten unofficial version of the commentary appears in the Banks-Baldwin Law Publishing Company edition of the Kentucky Revised Statutes and not in the official edition of the Kentucky Revised Statutes published by Bobbs-Merrill Company, Inc.

The Banks-Baldwin Law Publishing Company's unofficial version of the Penal Code commentary to KRS 532.080 states as follows:

"Finally, it should be noted that this section required that the determination of whether or not an offender is a persistent felony offender be made in a separate proceeding. This is an essential part of the provision if unfair influence upon the question of guilt or innocence of the most recent offense is to be avoided. It is anticipated that the procedure under this section would be as follows: The defendant would be tried for his present offense and if convicted would be sentenced by the jury in accordance with the provisions of KRS 532.060. Immediately thereafter, a special proceeding would be commenced before that same jury for the purpose of determining whether he should be designated as a persistent felony offender and sentenced under KRS 532.080. If the prosecution proves that he is a persistent felon, as that label is defined in this section, and the jury so finds, then the defendant is to be resentenced by the jury in accordance with the limitations established by subsection (4). If the jury is unable to agree unanimously that the defendant is a persistent felony offender or as to the sanction to be imposed upon him the sentence fixed by the jury under KRS 532.060 shall stand."

Looking to the updated unofficial version of the commentary to the Penal Code for guidance, one still sees the language suggesting that both guilt and punishment must be fixed by the jury or the defendant is to be given the sentence he received on the primary charge.

This Court, in the past in construing Kentucky Penal Code provisions, has looked for guidance to the commentary accompanying the 1971 proposed Penal Code. *Charles v. Commonwealth*, Ky., 634 S.W.2d 407 (1982) and *Blanton v. Commonwealth*, Ky.App., 562 S.W.2d 90 (1978). It has recognized that the 1971 proposed Penal Code commentary was somewhat rewritten to conform to the Penal Code as finally amended and enacted and has used the 1974 unofficial rewritten commentary as an aide in construing the Penal Code. *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1977).

In the instant case, both the 1971 proposed Penal Code commentary and the 1974 revised unofficial Penal Code commentary unequivocally state that if the jury on the persistent felony offender phase of the trial cannot agree either as to guilt or punishment of the defendant, then judgment is entered reflecting that fact and stating that the sentence fixed by the jury under KRS 532.060 for the primary charge shall stand.

Having sought the aid of the 1971 Penal Code commentary and the 1974 unofficial commentary in construing the Penal Code the issue is resolved.

I do not contend that the Penal Code commentary as an expression of legislative intent is a straight jacket on this Court, but rather that it should be consistently hon-

ored unless a grave injustice would result. No such injustice is present in this case.

STEPHENS, C.J., and AKER, J., join in this dissent.