**David Leroy SKAGGS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

May 23, 1985.

Rehearing Denied Sept. 5, 1985.

Linda K. West, Asst. Public Advocate, Donna Boyce Proctor, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Suzanne Guss, Christopher W. Johnson, Asst. Attys. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

Skaggs was convicted of the murders of Herman Matthews and his wife, Mae Matthews. He was sentenced to death for both crimes.

Herman Matthews was a 76-year-old, semi-retired scrap metal dealer. His wife was 67 years old and frequently helped in the business. Their home was connected to their place of business. He conducted a cash business and always carried large sums of cash on the premises. On May 6, 1981, a neighbor discovered the body of Herman Matthews in his place of business. Later the police found the body of Mae Matthews in the living room. Herman Matthews was shot three times, once in the right chest, once in the lower back and once in the left arm. He also suffered a head injury consistent with being hit with a hammer and not with falling. The head injury and the gunshot wounds to the chest and back were each capable of causing death independently of other injuries. Mrs. Matthews suffered two gunshot wounds, one in the left upper chest and one in the left abdomen. One wound occurred while she was standing and the other while she was lying down.

The police investigation led to Columbus, Indiana where they questioned Skaggs. After having him execute a waiver of rights form, the officers noticed dried blood on Skaggs shoes. While the police were examining the shoes, Skaggs fled. After a 20 minute foot chase in which warning shots were fired, Skaggs was apprehended. He was arrested on Indiana charges and returned to the local jail.

On May 14, still in Indiana, the Kentucky police again questioned Skaggs after again advising him of his rights. He told them he was present at the time of the Matthewses killings, but an accomplice, John Davis, pulled the trigger. On May 15, during the trip to Glasgow, Kentucky, Skaggs told police that the footprint on the door of the Matthews house was his and that he had attempted to kick in the door to burglarize.

Police investigation indicated that the alleged accomplice, Davis, was not involved with the crimes. In view of this information, on May 18, 1981, the police again questioned Skaggs and told him that he had a right to an attorney and that one had been appointed for him if he wanted the police to call the attorney. Skaggs indicated that he did not want an attorney, and during the subsequent interrogation, he confessed to having committed the murders of Herman and Mae Matthews during the course of a robbery and stated that he had acted alone.

After a jury trial, Skaggs was convicted of the murders of Herman and Mae Matthews, and he was also found guilty on two counts of robbery and burglary. At the sentencing phase of the murder conviction, the jury was unable to agree on the penalties for the two murders and was subsequently discharged. Approximately three months later, on June 22, 1982, the penalty phase was retried and a new jury selected. Much of the same evidence introduced at the guilt phase of the first trial was introduced at the retrial of the penalty phase. The final judgment sentencing Skaggs to death for the murder of Herman and Mae Matthews was entered on July 15, 1982. This appeal directly to this Court followed.

This Court affirms the judgment of the trial court.

Skaggs, through his counsel, raises thirty-two assignments of alleged error in this appeal. They are grouped as follows: 1) venue and jury issues; 2) alleged errors in the guilt phase of trial; 3) claims of errors in the penalty phase and 4) questions about the constitutionality of the Kentucky death penalty statute.

■ The trial judge did not commit reversible error in denying Skaggs' renewed motion for a change of venue at the second sentencing trial. Skaggs argues that the publicity prior to the penalty phase of the second trial prevented the seating of an impartial jury. He also maintains that the trial court should have granted his motion for a change of venue. He contends that the amount of attention and publicity that the whole incident received was so pervasive that it prevented the seating of an impartial jury in Barren County.

Careful examination of the entire record fails to indicate that any of the jurors actually seated at the guilt phase of the trial held any preconceived notion about his guilt which could not be laid aside. Of the twelve jurors who returned the death penalty, four stated during individual voir dire they had seen or heard little or no publicity about the case. Six others said that although they had been exposed to some publicity, they had not formed an opinion based on that fact. Juror Baxter stated that she could set aside information received outside the proceedings and render a decision based solely on the evidence. Although juror Vance was not asked any particular questions during the individual voir dire concerning publicity, she was present and did not respond to the trial judge's questions concerning publicity directed to the entire panel.

The record shows that the trial judge excused several members of the panel either because they had already formed an opinion or because of undue exposure to the prior proceedings.

The record indicates that the bulk of the pretrial publicity occurred long before jury selection began on the guilt phase of the trial on February 23, 1982. *See Collins v. Egeler*, 539 F.2d 597 (6th Cir.), cert. den. 428 U.S. 889, 97 S.Ct. 244, 50 L.Ed.2d 171 (1976).

Out of the 43 veniremen called, 15 were excused for cause, including 3 on the death

penalty issue, and 15 were struck by peremptory challenges of the parties. There was not the existence of such community prejudice as would prevent the selection of a proper jury. *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 102 (1980), cert. den. 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (1981). The authorities cited by Skaggs are distinguishable. The influence of the media did not pervade the proceedings.

■ The trial court's discretion in the matter will be given great weight because the trial judge is present in the county and presumed to know the situation. There has been no abuse of discretion in the denial of the motion for change of venue. *Nickell v. Commonwealth*, Ky., 371 S.W.2d 849 (1963).

■ The trial court did not commit reversible error by denying the motion of Skaggs for a change of venue because of pretrial publicity during the guilt trial.

A careful review of the media coverage, the general and specific voir dire indicates that under all the circumstances, the jury actually seated at the guilt phase of the trial was impartial. The denial of the motion for a change of venue was not an abuse of discretion.

None of the jurors indicated that their exposure to any publicity had adversely affected their ability to decide the case on the evidence alone. There was no community atmosphere so prejudicial that the jurors could be considered less than impartial. A careful review of all the allegations presented by Skaggs indicates that there is no considerable probability of the accused being unable to obtain a fair and impartial trial in the county in which he was tried. *Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981), cert. den. 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982).

The trial court did not commit reversible error in overruling the motion to suppress certain incriminating statements made by Skaggs to police officers on several different occasions. Skaggs argues that he was offered a "deal by the police and this "coercion" destroyed the voluntariness of his statements. These claims are taken from his testimony at the suppression hearing and not from the findings of fact of the trial court. Pursuant to RCr 9.78, the findings of fact of the trial court shall be conclusive.

In this case the accused was advised repeatedly of his *"Miranda"* rights. At every stage of the proceedings he rejected the assistance of counsel. It was not at his request that counsel was ultimately appointed, but rather because of the cautious concern of the trial judge.

■ It is fundamental that an accused must be informed of his right to counsel as well as his right to remain silent once an investigation focuses on him. However, these rights may be waived. *Jasper v. Commonwealth*, Ky., 471 S.W.2d 7 (1971). The fact that one suspected of a crime has no attorney present does not prevent him from confessing his crime if he does so voluntarily knowing that his confession may be used against him.

■ His allegation of a police bargain is unconvincing. The representation to an accused who is a cooperative confessor that the fact of his cooperation would be made known to the prosecuting authorities is not sufficient to render a confession involuntary. *United States v. Curtis*, 562 F.2d 1153 (9th Cir., 1977), cert. den., 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978).

■ His argument that while in custody in Indiana, he was represented by an attorney on another charge and that the failure of the Kentucky police to notify that attorney of the questioning is without merit. This argument has been rejected in *United States v. Vasquez*, 476 F.2d 730 (5th Cir.), cert. den. 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72 (1973).

■ The argument that once Kentucky counsel had been appointed the accused could not waive his right to counsel at a later interrogation is unpersuasive. *See Moore v. Wolff*, 495 F.2d 35 (8th Cir., 1974). As the trial judge noted in his findings of fact, on the morning of May 18, 1981,

Skaggs appeared in district court and advised the judge that he did not want an attorney and was ordered back to jail. Shortly thereafter, the district judge reconsidered and appointed the local public defender to represent Skaggs. At this time, neither Skaggs nor the lawyer had been consulted. Soon thereafter the police learned that the alleged accomplice was not involved in the crimes and, they went to the jail and told Skaggs they wanted to question him further. The police advised him that the court had appointed a public defender and offered to call the lawyer before any further questioning. The accused told the police that he did not want an attorney present. If an accused can voluntarily waive his right to counsel before one has been appointed, there is no compelling reason to hold that he may not voluntarily waive his right to have counsel present at an interrogation after counsel has been appointed.

In view of all the circumstances, the trial judge properly admitted the voluntary statements of Skaggs who had waived his right to have counsel present during the questioning.

The contention that the trial judge should have declared a mistrial when the prosecutor made a passing reference during the reading of the confession to the effect that a portion of it had been deleted is without merit. In order for a mistrial, there must appear in the record "a manifest necessity for such an action or an urgent or real necessity." *Wiley v. Commonwealth*, Ky.App., 575 S.W.2d 166 (1979); *Brown v. Commonwealth*, Ky., 558 S.W.2d 599 (1977).

The prosecution's rebuttal of the mitigating evidence presented by Skaggs was not reversible and did not affect the right of Skaggs to present such evidence. The testimony of Dr. Ravini was appropriate as rebuttal to the testimony of Dr. Bresler, and the result of the conflicting evidence did not deny Skaggs his right to present mitigating evidence. The two psychiatric experts disagreed as to the state of the mental health of the defendant and his ability or capacity regarding the murders. Skaggs was not denied an opportunity to present mitigating evidence, that evidence was merely disputed. The jury was properly instructed in accordance with the statutes in this respect.

The evidence of the criminal record of Skaggs was properly introduced. In the past he had been convicted of first-degree robbery twice, second-degree escape and auto banditry in Indiana. Evidence of a previous criminal record can be properly introduced to prove that the mitigating circumstance of the absence of a criminal record did not exist. *See Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). The instruction in this case is very similar to that approved in *Smith v. Commonwealth*, Ky., 599 S.W.2d 900, 911 (1980). Here Rowland Skaggs, father of the accused, was asked on cross-examination whether his son had convictions for criminal activity after he left home. Thus the defendant himself introduced evidence regarding his past criminal history as a mitigating circumstance.

Once the requisite statutory aggravating factor has been found to exist, the aggravating factor of a prior criminal history may be considered as evidence in aggravation by the jury during the sentencing stage. *Zant v. Stephens*, 462 U.S. 862 at 878, 103 S.Ct. 2733 at 2743, 77 L.Ed.2d 235 at 250, *supra*. In *Zant*, the U.S. Supreme Court held that the defendant's prior criminal record was properly admitted under a Georgia statute similar to KRS 532.025(1)(a), even though one of the statutory aggravating circumstances for which the evidence may have been considered, was held to be constitutionally vague under state law.

The arguments advanced by Skaggs have been previously rejected by this Court in *Gall, supra*, and *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984). The prior criminal record of the defendant is precisely the type of information that the jury should have considered in making its determination as to sentence in this case.

■ The factual references to the jury's sentence as a recommendation were unaccompanied by any message that the responsibility of the jury was lessened in any degree and the remarks were not reversible error.

■ KRS 532.025(1)(b) states that the jury in a death penalty case is to "recommend" a sentence for the defendant. The fixing of a sentence by a jury in a capital case is a recommendation which is not binding on the trial judge. *See Gall, supra.* It would appear to be simple common sense to accept the fact that the word "recommendation" is used in the statute and it is clearly proper to refer to it as such. The error occurs when, because of additional comments, a message is conveyed that the juror's decision is not the final one. *Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984).

Here the jury was told its verdict was a recommendation but that information was never accompanied by any inference that its responsibilities were any less.

The record is full of references by both the prosecution and defense to the seriousness of the matter that the jury was to consider. The trial judge asked one prospective juror if he could send a man to death. The defense counsel stated that the prosecutor was asking the jury to sentence the accused to die in the electric chair. The jury was completely and totally aware of its responsibilities.

The penalty phase instructions were proper. Skaggs alleges numerous errors regarding the instructions. He argues that both the guilt and penalty phases should be retried because the jury which determined punishment was not the same jury that determined guilt. He makes this argument despite a pretrial motion by defense trial counsel for separate juries on the guilt and sentencing phases. Counsel for Skaggs expressly elected to proceed with retrial on the penalty phase before a different jury after it was determined that the first penalty jury was deadlocked.

In death penalty case, KRS 532.025(1)(a) provides that if the trial court is reversed on appeal because of error only in the presentence hearing, the new trial which may be ordered shall apply only to the issue of punishment. This statute clearly contemplates a situation similar to this case where a different jury was used in the penalty phase. *See Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980).

■ The jury was made aware of its option not to impose the death penalty. The penalty phase instructions were essentially the same as those in *Smith v. Commonwealth, supra.* The trial court provided a form for the various alternatives at the end of the instructions. The mitigating and aggravating circumstances were set out in Instructions 1 and 2. The jury was also advised through Instructions 3 and 4 as to authorized sentences and the question of reasonable doubt. The jury was well aware that it need not sentence Skaggs to death even if it found an aggravating circumstance. A careful examination of the entire jury charge indicated that the jury knew it could recommend a life sentence even if it found an aggravating circumstance beyond a reasonable doubt. There is no reason to reverse the death sentence.

The second sentencing phase consisted of testimony from 16 of the 22 witnesses who testified at the guilt phase. Informed of Skaggs' murder convictions and presented with abundant evidence, nearly identical to that brought forward at the guilt phase, the second sentencing jury was in a position no different from the first jury as it embarked upon the penalty phase.

■ Skaggs also takes exception to the trial court's instruction during the penalty phase in that the trial judge should have instructed on the elements of the aggravating factors. Skaggs cites no authority for such a requirement, and we cannot find any rationale for the argument. During the guilt phase of the trial, Skaggs was found guilty of first-degree robbery and burglary pursuant to KRS 515.020 and KRS 511.020. To require the penalty jury to make a finding on the elements of rob-

bery and burglary, would render the first verdict useless. Such a construction is contrary to the law. *See* KRS 532.025(1)(a); *Smith v. Commonwealth, supra.*

■ The argument that the jury was not properly advised of the role of mitigation is totally without merit. Instructions No. 1(a) and (b) set out two specific examples of what was meant by mitigating circumstances. The trial judge also instructed the jury to consider the defendant's age, character and record and any other fact or circumstance it considered mitigating. Instruction No. 6 also defined "mitigating circumstances" as factors put forth to show the appropriate sentence is a sentence other than death. The jury was properly instructed on the nature of mitigation and was admonished to apply that law only to the evidence presented. *Smith v. Commonwealth, supra.* There is no requirement that the jury make written findings on mitigation.

■ Failure to give a specific instruction on who has the burden of proof is not required. *Gall, supra.* The jury was repeatedly advised as to who had the burden of proof and what that burden was. There is no requirement that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt. *Smith, supra.* There is no requirement that the jury be instructed to find that death is the appropriate punishment beyond reasonable doubt. The jury was instructed that imposition of the death penalty was only permitted if they found existence of aggravating circumstances beyond a reasonable doubt. Such an instruction is sufficient. There was no error in not giving an instruction on the right of the accused not to testify. Such an instruction is given only when the defendant requests it. No request was made. There is no requirement that the jury be instructed to disregard passion or prejudice. This matter was taken care of on voir dire. It was also proper not to instruct the jury on parole or to define reasonable doubt in the instructions. The jury was properly advised as to

unanimity and the presumption of innocence. The instructions were proper.

The instructions during the penalty phase were proper. Similar instructions have been found to be correct. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The trial judge's comments to juror Smith were not intended to and did not provoke a mistrial, and therefore double jeopardy did not prevent a retrial of the death penalty phase.

■ The trial judge was faced with a difficult situation. A juror had requested a conference and with permission from both attorneys the judge agreed to meet with the juror. The jury had been deliberating in excess of twelve hours, and the juror had a question about parole. The trial judge properly informed him that they must base their decision on the evidence presented and the instructions given. The jury returned to deliberate, and an hour later the foreman announced they were hopelessly deadlocked. At the time, defense counsel moved to discharge the jury and the trial court complied.

Skaggs now argues that the trial judge intentionally acted so as to force Skaggs to seek a mistrial and that retrying him under these circumstances amounts to double jeopardy. A careful examination of the record indicates the trial judge did everything in his power to avoid a mistrial.

■ The general rule is that double jeopardy does not prevent reprosecution where circumstances develop which are not attributable to either prosecutorial or judicial misconduct. *See United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

*Stamps v. Commonwealth*, Ky., 648 S.W.2d 868, 869 (1983), specifically applies the holding in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), to the double jeopardy clause in Kentucky. The United States Supreme Court has also recognized that the double jeopardy clause will not bar retrial where the first trial is terminated by manifest

necessity. *See Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

The trial court repeatedly informed juror Smith that the law did not define life imprisonment and speculation on the question was forbidden to jurors. Skaggs now objects to the trial judge meeting with only one juror as a violation of RCr 9.74, which requires that no information requested by the jury shall be given unless it is in open court in the presence of the entire jury. Here all counsel agreed to the meeting and waived any objections to it. The error, if any, is nonprejudicial, and it is both waived and unpreserved. *Franklin v. Commonwealth,* Ky., 477 S.W.2d 788 (1972).

Skaggs did not request the court to repeat its admonition to the entire jury and the court's previous statements were clear and unequivocal. He may not now complain of the court's failure to do so. *Ice, supra,* at 677.

The trial judge's reference to a pardon was not intended to and did not provoke Skaggs to move for a mistrial. The trial judge admonished juror Smith that considerations of any future consequences, such as parole or pardon, had no place in the jury's finding of fact. *Payne v. Commonwealth,* Ky., 623 S.W.2d 867 (1981). The comment was to advise the jury that any such considerations were totally improper and forbidden.

A careful review of the trial court's complete conversation with juror Smith indicates that he was concerned only that the jurors understand that the verdict must be returned in accordance with the evidence and with the instructions. There is no indication of any intent by the court to provoke a mistrial out of fear that the jury was likely to return a life sentence. The double jeopardy clause does not bar a retrial.

The trial judge did not commit reversible error by failing to impose a sentence once the jury deadlocked during the first penalty phase. Skaggs had waived judge sentencing and is now in no position to complain that the trial court erred in any way by failing to sentence him. *See Ice, supra.*

KRS 532.025(1)(b) clearly contemplates a jury recommendation in death penalty cases tried by a jury. In the absence of findings by a jury where the jury is deadlocked, the trial judge has no authority to fix any sentence. *See Commonwealth v. Crooks,* Ky., 655 S.W.2d 475 (1983).

The Georgia authority cited by Skaggs is not persuasive. Though similar, the Kentucky death penalty statute has distinct differences from Georgia. Georgia law specifically requires the trial court to sentence the defendant when the jury fails to recommend a death sentence. *Georgia Code Ann.* § 26–3102. KRS 532.025(3) is silent on this question.

There is no confusion or uncertainty as to what course should be followed when the jury deadlocks during the penalty phase of a capital case. The failure of a jury to reach a verdict results in a mistrial and permits the matter to be retried. *Miller v. State,* 237 Ga. 557, 229 S.E.2d 376 at p. 379 (1976). A trial of the penalty phase following a deadlocked jury does not violate either the Federal or State constitutional prohibition against double jeopardy. Retrial under these circumstances does not constitute double jeopardy under KRS 505.-030 which permits retrial upon proper termination. Skaggs expressly moved for and consented to a mistrial while the court concurrently determined that the declaration of mistrial was a necessity. There was no error in the trial court's having a new trial on the penalty phase.

We have considered whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases and have in this regard considered the crimes committed here and all of the evidence surrounding Skaggs and his background.

Data for the use of the Court has been compiled in accordance with KRS 532.-075(6)(a), (b) and (c). We have carefully reviewed all of the cases in which the death penalty was imposed after January 1, 1970, as follows: *Scott v. Commonwealth,* Ky., 495 S.W.2d 800 (1972); *Leigh v. Common-*

*wealth,* Ky., 481 S.W.2d 75 (1972); *Lenston and Scott v. Commonwealth,* Ky., 497 S.W.2d 561 (1973); *Call v. Commonwealth,* Ky., 482 S.W.2d 770 (1972); *Caldwell v. Commonwealth,* Ky., 503 S.W.2d 485 (1972); *Tinsley and Tinsley v. Commonwealth,* Ky., 495 S.W.2d 776 (1973); *Galbreath v. Commonwealth,* Ky., 492 S.W.2d 882 (1973); *Caine and McIntosh v. Commonwealth,* Ky., 491 S.W.2d 824 (1973); *Hudson v. Commonwealth,* Ky., 597 S.W.2d 610 (1980); *Meadows v. Commonwealth,* Ky., 550 S.W.2d 511 (1977); *Self v. Commonwealth,* Ky., 550 S.W.2d 509 (1977); *Boyd v. Commonwealth,* Ky., 550 S.W.2d 507 (1977); *Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980); *Gall v. Commonwealth,* Ky., 607 S.W.2d 97 (1980); *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519 (1984); *White v. Commonwealth,* Ky., 671 S.W.2d 241 (1984); and *Harper v. Commonwealth,* Ky., 694 S.W. 2d 665 (1985).

All of these cases except *Gall, McQueen, White* and *Harper,* have had the death penalty set aside for the reason the statute was invalid under *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In making a comparative study of these cases and the circumstances in this case, we are of the opinion that the death sentence here is not excessive or disproportionate to the penalty imposed in the above enumerated cases.

Skaggs raises the issue of whether the public advocate is entitled to data compiled for this Court pursuant to KRS 532.-075(6)(a), (b) and (c). This Court has previously decided that the public defender is not entitled to such data. *Ex parte, Farley,* Ky., 570 S.W.2d 617 (1978); *Gall, supra.* There is no need to reexamine this issue again.

The Kentucky death penalty statute was constitutionally applied to Skaggs. There is no requirement that the mitigating circumstances outweigh the aggravating circumstances. The death sentence is proportionate in this case. A careful review of cases involving the imposition of the death penalty for a murder that occurred during or after a robbery indicates that the imposition of the death penalty in this case is not disproportionate to the type of offense. *See, McQueen, supra; White, supra.*

Kentucky's death penalty statute is constitutional. The arguments presented here are unconvincing and are similar to those found to be without merit in *McQueen, supra.* Skaggs has not demonstrated that the Kentucky death penalty statute is arbitrary, discriminatory or freakishly applied for the same reasons set out in McQueen.

The judgment of conviction is affirmed.

STEPHENS, C.J., and AKER, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

GANT, J., concurs in result.

LEIBSON, J., dissents by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent for the following reasons:

1) Evidence of prior history of non-assaultive criminal behavior was erroneously admitted at the penalty phase.

KRS 532.025(2)(b) specifies that the defendant may present evidence of "no significant history of prior criminal activity" as one of the "mitigating circumstances." Skaggs presented *no* such evidence. He did not open the door to this subject.

The statutory "aggravating circumstances" (KRS 532.025(2)(a)) do *not* include previous criminal history in general as a statutory aggravating factor; *only* proof of "substantial history of *serious assaultive criminal convictions"* is permitted. (Emphasis added)

We should not permit evidence of aggravating circumstances other than those statutory aggravating circumstances which the law allows. Such evidence was erroneous and obviously prejudicial. *Maggard v. State,* Fl., 399 So.2d 973, *cert. den.* 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981).

*Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), is erroneously cited in the majority opinion as holding otherwise. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), cited in the majority opinion is inapposite. It is concerned with proof of a *statutory* aggravating circumstance ("substantial history of serious assaultive criminal convictions"), held unconstitutionally vague by the Georgia Supreme Court; not with the unfettered use of nonstatutory aggravating circumstances.

2) Failure to suppress the confession given by the appellant in response to a police-initiated interrogation conducted *after* appellant was represented by counsel.

Perhaps admitting the appellant's first statement, given in Indiana on May 14, 1981, can be approved although counsel was not present on grounds that his then attorney was for unrelated Indiana offenses. But the second statement of May 18, 1981 was conducted by police-initiated interrogation after the accused had been arraigned in Kentucky District Court, and the officers knew appellant had appointed counsel on the charges in question. Under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) evidence thus obtained must be suppressed. Our decision is squarely in conflict. Recently, in *Smith v. Illinois,* 469 U.S. ——, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the United States Supreme Court reaffirmed and reenforced its ruling in *Edwards.* We are not free to officially disagree with the United States Supreme Court's interpretation of the U.S. Constitution.

3) The trial court erroneously refused a change of venue on the second trial of the penalty phase.

The new trial took place only three months after the mistrial of the penalty phase. The prosecutor had been quoted extensively in local news media, stating that he was seeking the death penalty because of the potential for parole, that there was an enormous amount of money involved in retrying the accused, and that the jury was derelict in its duty at the first trial in not finding the death penalty. The parole problem could not be addressed on voir dire, since to raise the subject is to cause the problem. At one point the trial court stated into the record that the information to the press from the prosecutor to the press was irrelevant and clearly erroneous. Failing to grant a change of venue in these circumstances was an abuse of discretion. See *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

4) Jurors Stilts and Mills should have been excused for cause at the penalty trial.

Mills knew about the possibility of parole and admitted she would be influenced by it. Stilts stated that he had formed an opinion that the death penalty was appropriate at the time of the first trial. Such a juror should not be "rehabilitated" by asking him whether he could put his opinion aside and be fair. See *Irvin v. Dowd, supra.* The situation calls for application of the principle of implied or presumed bias. *Pennington v. Commonwealth,* Ky., 316 S.W.2d 221 (1958).

5) Other cumulative errors are:

a) Error in repeated references to collateral criminal activity: (1) selling drugs illegally; (2) having "pulled time"; (3) defendant was on a list of persons with the propensity to commit robbery; and (4) the defendant had a *stolen* gun.

b) The prosecutor's repeated references to the juror's duty as being only "a recommendation." See our recent decision in *Ward v. Commonwealth,* Ky., 695 S.W.2d 404 (1985).

The glaring deficiency in this case is the problem with fundamental fairness that resulted from failure to grant a change of venue for the second trial to consider the death penalty. The prosecutor created the problem by generating unacceptable pretrial publicity. The defense was shut off in four different directions: the court refused to either change venue or limit to life; the court refused individual voir dire of jurors regarding exposure to pretrial publicity

and group voir dire in such circumstances is impossible.