**Martha LUCAS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 90–CA–1884–MR.**

Court of Appeals of Kentucky.

May 15, 1992.

Case Ordered Published by Court of Appeals June 25, 1992.

Discretionary Review Denied by Supreme Court Dec. 9, 1992.

David A. Lambertus, Lori Ann Arnold, Louisville, for appellant.

Chris Gorman, Ann Louise Cheuvront, Frankfort, for appellee.

Before LESTER, C.J., WILHOIT, J., and STEPHENS, Special Judge.

STEPHENS, Special Judge.

Martha Lucas appeals from a judgment denying her a new trial. Lucas was convicted by a jury on June 19, 1990, of the charge of manslaughter in the first degree in the death of her husband.

The first error alleged by appellant is that the trial court failed to instruct the jury on the Battered Woman's Syndrome. It was testified that Lucas had been abused by her husband for approximately ten (10) years. Appellant's brief states "the issue in this case is not whether Martha Lucas shot her husband but whether she acted in self-defense." Lucas contends that the instruction on self-protection was inadequate and failed to include in any way Lucas' theory of the case, the Battered Woman Syndrome. The trial court instructed the jury, in pertinent part, as follows:

INSTRUCTION NO. 4—SELF-
PROTECTION—DEADLY
FORCE

If at the time Ms. Lucas shot and killed James Lucas (if she did so) her use

of physical force upon him was justified if she believed that such force was necessary to protect herself or another against the use or imminent use of unlawful physical force by Mr. Lucas, but including the right to use deadly physical force in so doing only if she believed it to be necessary in order to protect herself or another from death or serious physical injury at the hand of Mr. Lucas, and subject to this qualification:

Regardless of what Ms. Lucas then believed, if you believe from the evidence beyond a reasonable doubt the following:

(a) That it was not in fact necessary for her to use any physical force against Mr. Lucas in order to protect herself or another or, if it was, she used more than was actually necessary;

AND

(b) That her belief to the contrary and the action she took against Mr. Lucas in reliance upon that belief amounted to:

(i) Reckless conduct, then she was not so privileged, and you will find her guilty of reckless homicide under Instruction 3;

OR

(ii) Wanton conduct, then she was not so privileged, and you will find her guilty of second-degree manslaughter under Instruction 2.

Appellant's tendered instructions were essentially the same as those given, with two exceptions. Appellant's tendered instructions included a specific reference to a "reasonably prudent battered wife." And, they required a finding "that the defendant was not suffering from the Battered Woman Syndrome."

As Lucas states, the issue is whether she acted in self-defense. Also *see Commonwealth v. Rose*, Ky., 725 S.W.2d 588 (1987); and, *Commonwealth v. Craig*, Ky., 783 S.W.2d 387 (1990), overruling *Rose*. An appropriate self-protection instruction was given to the jury which included the defense's theory of the case deducible from the evidence. *Commonwealth v. Duke*, Ky., 750 S.W.2d 432 (1988). We find no error in the trial court's instructions to the jury.

■ Appellant next argues that the Commonwealth's reference during closing statement to her failure to testify was impermissible and constituted reversible error. In fact, the Commonwealth's reference was to the defendant's various pretrial statements of denial, coupled with her current acknowledgment that she caused the death, but in self-defense. This statement on the part of the Commonwealth does not constitute impermissible comment on the failure of Lucas to testify. The comment was not reasonably certain to direct the jury's attention to Lucas' failure to testify. *Tinsley v. Commonwealth*, Ky., 495 S.W.2d 776 (1973). Additionally, the trial judge properly ruled that because Lucas admitted to shooting her husband, the inference was not prejudicial. *See Freeman v. Commonwealth*, Ky., 425 S.W.2d 575 (1967).

Appellant points to three areas she argues are prosecutorial misconduct and which individually or cumulatively constitute reversible error.

■ Lucas first argues that the Commonwealth's reference to the Bible in closing statement was highly inflammatory, prejudicial to her, and constituted reversible error. The statement at issue made by the Commonwealth was "The Ten Commandments don't say it's okay to kill a spouse abuser. It says 'Thou Shalt Not Kill'." The statement, appellee maintains, was intended to be a response to appellant's sister's testimony explaining some of appellant's conduct in view of Christian values. Lucas argues that *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984), condemns such prosecutorial comment. However, in *Ice*, testimony was allowed by a minister "as to his study of biblical scriptures and his views that the bible 'teaches the death penalty for murder and other crimes'. This testimony was followed by examples from the scriptures and concluded by his view expressed on cross-examination that this jury would be condemned by God if they did not kill Ice." *Ice, supra* at

676. This court finds that the Commonwealth's comments, while perhaps ill-considered, did not exceed a reasonable latitude and were harmless. *Marlowe v. Commonwealth*, Ky., 709 S.W.2d 424 (1986).

 Lucas also argues that the Commonwealth committed prosecutorial misconduct by stating before the jury that the defense had tape recordings which the Commonwealth would produce and then failed to enter these tapes into evidence. The record reflects that the jury was informed that the prosecutor had failed to give defense counsel proper notice that the tapes would be used that day, and, consequently, the tapes were not allowed to be submitted into evidence and heard by the jury. Defense counsel was not accused of hiding evidence from the jury. Thus, the facts herein are distinguished from the facts in *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988), and do not warrant reversal.

 The final allegation of prosecutorial misconduct is that the trial court erred in denying Lucas' motion for a mistrial when the Commonwealth's witness referred to the gun in question as the "murder weapon." This issue has not been preserved for appellate review, but will be addressed nonetheless. Having reviewed the record of this case, we conclude that the reference to the "murder weapon," whether inadvertent or not, was insignificant and resulted in no prejudice to appellant. *Adkins v. Commonwealth*, Ky.App., 647 S.W.2d 502 (1982).

All in all, we find no merit to appellant's assertion of prosecutorial misconduct.

 Finally, Lucas argues that the trial court erred in denying the motions for a mistrial due to highly prejudicial pretrial and during-trial publicity. The record reflects that adequate voir dire of the jury occurred. The trial judge admonished the jury regarding reading the newspaper and watching the televised news until the trial was concluded. The trial judge polled the jury individually and collectively as to whether they had read newspaper articles or viewed newscasts regarding the trial.

Two (2) jurors were excused after one (1) such period of questioning. The jurors were admonished at each recess by the judge. The trial judge did not abuse his discretion in denying the motions for a mistrial. *Veach v. Commonwealth*, Ky., 572 S.W.2d 417 (1978); and, *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985). As appellee points out, trials such as appellant's are newsworthy. And, we live in a time and society where news media report freely. It is unrealistic to expect to completely sanitize a trial and jury, and the law of the Commonwealth does not require such. The issue is whether the publicity influenced the jury or its verdict. There is no reason to believe this jury or verdict was so prejudiced.

The judgment of the Jefferson Circuit Court is AFFIRMED.

All concur.